745 P.2d 1383

ELECTRICAL DISTRICT NO. 2, PINAL COUNTY, ARIZONA, a political subdivision of the State of Arizona, Petitioner,

v.

ARIZONA CORPORATION COMMISSION; Marcia Weeks, Renz Jennings and Dale Morgan, as members thereof; and Arizona Public Service Co., an Arizona corporation, as the Real Party in Interest, Respondents,

and

Richard Ungar and Joan Ungar, husband and wife, Intervenors.

ARIZONA PUBLIC SERVICE COMPANY, Plaintiff–Defendant, Appellant, Cross–Appellee,

v.

ELECTRICAL DISTRICT NO. 2, PINAL COUNTY, ARIZONA, a political subdivision of the State of Arizona, Defendant–Plaintiff, Appellee, Cross–Appellant.

Nos. CV 87–0071–SA, CV 86–0532–PR.

Supreme Court of Arizona, In Banc.

Oct. 27, 1987.

Reconsideration Denied Dec. 15, 1987.

Martinez & Curtis, P.C. by Michael A. Curtis, Jay M. Martinez, William P. Sullivan, Steven B. Bennett, Phoenix, for Elec. Dist. No. 2.

Arizona Corp. Com'n by Christopher C. Kempley, Timothy M. Hogan, Janice M. Urbanic, Phoenix, for Arizona Corp. Com'n.

Snell & Wilmer by Steven M. Wheeler, George H. Lyons, George J. Coleman, Phoenix, Stanfield & McCarville by Thomas A. McCarville, Casa Grande, for Arizona Public Service.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Michael S. Rubin, Phoenix, for Richard and Joan Ungar.

CAMERON, Justice.

## I. JURISDICTION

Pinal County Electrical District No. 2 (The District) petitioned this court for review of a court of appeals' memorandum decision [1 CA–CIV 8334]. The District also filed a special action, seeking review of Decision No. 55298 of the Arizona Corporation Commission (Commission) (Nov. 19, 1986). We granted the petition for review of the court of appeals' memorandum decision and accepted jurisdiction of the petition for special action from the Commission's decision. We consolidated the two matters for argument and decision. We have jurisdiction pursuant to Ariz. Const. Art 6, §§ 5(3), 5(1), and A.R.S. § 40–254(F).

## II. ISSUES

A. As to the court of appeals' opinion:
1. Are the rights given under A.R.S. § 40–281(B) within APS' certificate?
2. Was the B'N'B Restaurant within the APS certificated area?
3. Was the Tierra Grande subdivision and trailer park within the APS certificated area?

B. As to the Arizona Corporation Commission's decision:
1. Was the Arizona Corporation Commission bound by the decision of the trial court as modified by the court of appeals?

## III. FACTS

This matter is preceded by years of litigation over the right of Arizona Public Service (APS) and the District to provide electrical service in Pinal County. This case focuses on service to two properties. One property is a restaurant, B'N'B, located fifty feet outside the city limits of Casa Grande. The other is a subdivision, Tierra Grande, located approximately three miles from the town limits of Eloy and eight miles from the city limits of Casa Grande.

Both properties lie within the geographic boundaries of the District. The District was created in 1923 for the primary purpose of providing electricity for the irrigation of arid lands in Pinal County. A.R.S. § 48–1701 *et. seq.* The District is a political subdivision of the state pursuant to Ariz. Const. Art. 13 § 7 and not a public service corporation under Ariz. Const. Art. 15, § 2. As such it is not subject to regulation by the Commission.

254

APS is a public service corporation, Ariz. Const. Art. 15, § 2, regulated by the Commission, Ariz. Const. Art. 15, § 3; A.R.S. § 40–202. Before a public service corporation shall construct a line, plant, service or system, it must first obtain from the Commission a certificate of public convenience and necessity (certificate), A.R.S. §§ 40–281(A), –282, and is otherwise obligated to comply with the orders, decisions, rules and regulations of the Commission. A.R.S. § 40–202(B).

Dating back to the 1920s, the Commission granted numerous certificates to APS and its predecessors in interest to provide electrical service in Pinal County. The scope of the certificates was described in decisions issued by the Commission. Some of the decisions employed vague descriptions of the certificated territories, describing the areas to be served with such terms as "in the vicinity thereof" and "territory adjacent thereto."

Such vague and ambiguous terms were used to describe the certificated areas now at issue. In 1928, the Commission issued a certificate to APS' predecessor in interest authorizing the operation of electric light and power utilities in the "City of Casa Grande, Pinal County, Arizona, and vicinity." Decision No. 4440 (May 23, 1928). In 1929, the Commission granted a certificate to a predecessor in interest for the operation of an electric plant "serving Eloy and territory adjacent thereto." Decision No. 4850 (June 12, 1929). A later certificate authorized service to "the unincorporated Town of Eloy and territory adjacent thereto." Decision No. 18694 (Feb. 10, 1949).

Operating pursuant to these certificates, APS and its predecessor in interest provided electrical service to customers in Casa Grande and Eloy. As these municipalities grew and their boundaries expanded, the area served by APS expanded even though APS did not seek specific authority from the Commission to expand its certificated territories. This was allowed by A.R.S. § 40–281(B) which reads:

B. This section shall not require such corporation to secure a certificate for an extension within a city, county or town within which it has lawfully commenced operations, or for an extension into territory either within or without a city, county or town, contiguous to its street railroad or line, plant or system, and not served by a public service corporation of like character, or for an extension within or to territory already served by it, necessary in the ordinary course of its business. If a public service corporation, in constructing or extending its line, plant or system, interferes or is about to interfere with the operation of the line, plant or system of any other public service corporation already constructed, the commission, on complaint of the corporation claiming to be injuriously affected, may, after hearing, make an order and prescribe terms and conditions for the location of lines, plants or systems affected as it deems just and reasonable.

In the 1970s, APS and the District began to encroach upon each others territory; litigation in the courts and the Commission followed.

### A. The Court Suit

In 1972, APS filed an action in the Superior Court of Pinal County for declaratory relief. APS claimed that the District was acting in excess of its statutory authority by providing electrical services to customers other than those pumping water for irrigation of arid farms within the district and domestic uses incidental to farming, thereby violating the certificate which authorized APS to serve Casa Grande and vicinity.

On 1 December 1981, Judge McBryde of the Pinal County Superior Court held that the District's primary purpose was to provide electrical service to irrigate farm lands and to supply incidental electricity to the farms. However, the District could also provide electrical service to other classes of customers (residential, industrial, commercial and municipal), when such service would not interfere with its primary purpose and when it would not directly compete with a public service corporation, such as APS, capable of and properly certificated to serve such customers. Judge

McBryde held that there should be no duplication of service in the future and that APS, within the area of its certification, should be given the first right to serve new customers, other than irrigation pumping and farm and domestic services incidental thereto, which it was ready, willing and able to serve. Neither party appealed this judgment.

In 1983, APS filed a post-judgment proceeding seeking to enjoin the District from providing electrical service to B'N'B after B'N'B had moved from a location where it had been served by the District. The District, at approximately the same time, filed a suit in Maricopa County Superior Court seeking to enjoin APS from constructing facilities to serve a second phase of development of the Tierra Grande subdivision. The cases were consolidated in Maricopa County and decided by Judge Linda K. Scott in one proceeding.

Concluding that each party would be more likely to succeed in these respective claims, Judge Scott enjoined the District from providing electrical service to B'N'B, *pendente lite* and enjoined APS from providing electrical service or undertaking construction to provide electrical service to the Tierra Grande development and trailer park, *pendente lite.* Noting that the Commission has concurrent jurisdiction to interpret the scope and extent of issued certificates of convenience and necessity, Judge Scott directed APS to pursue a final resolution of the matter with the Commission so as to identify those portions of Pinal County which are within the APS certificates. Judge Scott arrived at the following conclusions of law:

"1. For purposes of interpreting and enforcing Judge McBryde's December 1, 1981 Judgment, A.P.S. has a right of first refusal to serve all new (subsequent to December 1, 1981) electrical customers, other than irrigation pumping and farm and domestic services incidental thereto, within those areas encompassed by its Certificates of Convenience and Necessity issued pursuant to Arizona Corporation Decision Nos. 4440 and 18694.

2. Outside the areas encompassed by A.P.S.' Certificates of Convenience and Necessity, A.P.S. may provide electricity as set forth in A.R.S. § 40–281(B).

3. In areas not within A.P.S.' Certificates of Convenience and Necessity E.D. No. 2 [The District] can provide electrical service to residential, industrial, commercial and municipal customers for which electrical service is not otherwise available.

4. A.P.S. does not have a right of first refusal in areas it can serve under A.R.S. § 40–281(B).

5. The rights embodied in A.R.S. § 40–281(B) are not within a Certificate of Convenience and Necessity." Appendix 3 to the Petition, Findings of Fact, Conclusions of Law and Order, February 13, 1985, pages 4–5; slip opinion, page 5.

\* \* \* \* \* \*

10. The Arizona Corporation Commission has authority and jurisdiction to issue Certificates of Convenience and Necessity for public service corporations and concurrent jurisdiction with this Court to interpret the scope and extent of issued Certificates of Convenience and Necessity.

The court of appeals issued a memorandum decision, affirming in part and reversing in part the decision rendered by Judge Scott. The court of appeals affirmed the trial court's decision enjoining the District from providing service to B'N'B and reversed the decision to enjoin APS from providing service to Tierra Grande. The court of appeals found the word "contiguous" in A.R.S. § 40–281(B) to mean "near one another, rather than in actual contact." The court went on to find that B'N'B, 50 feet from the then city limits of Casa Grande and Tierra Grande, eight miles from the city limits of Casa Grande and three miles from the town limits of Eloy, were "contiguous" within the scope of APS' Certificates by operation of A.R.S. § 40–281(B). The court also found that Judge Scott had incorrectly interpreted that portion of Judge McBryde's 1981 decision involving APS and the District dealing with APS' rights of first refusal and "run-

along rights" arising under A.R.S. § 40–281(B), in which she found that these rights were not part of APS' Certificates. We granted the petition for review to correct what we believe to be misstatements of the law regarding the extent of the authority of the parties to serve areas in Pinal County.

1. Scope of Certificate

■ We first consider the scope of the APS certificates. A.R.S. § 40–281(B) provides for exceptions to the general rule prohibiting expansion without first securing a certificate from the Commission. Reading the statute as follows, we find three methods by which APS could lawfully extend its certificate without seeking permission of the Commission.

This section shall not require such corporation to secure a certificate:

1. For an 'extension' within a city, county or town within which it has lawfully commenced operations, or

2. For an extension into territory either within or without a city, county or town, 'contiguous' to its ... line, plant or system, and not served by a public service corporation of like character, or

3. For an extension within or to territory already served by it, necessary in the ordinary course of its business.

This statute allows APS to expand anywhere within the city limits for which it is certificated, including future expansion of the city limits, without seeking permission from the Commission. The statute also allows APS to extend service to areas contiguous to its certificated area if such area is not already serviced by a public service corporation.

■ The trial court held that these additional areas allowed by § 40–281(B) were not part of APS' certificate. In so holding, the trial court held APS did not have the right of first refusal in these areas or so called "run-along rights."[1] The court of

appeals differed in holding that when the statute allows APS to extend its service area the new areas are part of the certificate. As the court of appeals noted:

The purpose of A.R.S. § 40–281(B) is to allow for the orderly growth of a certificated area without unnecessary and repetitious administrative proceedings. A certificate and the § 40–281(B) rights attached to it are inseparable. If this were not so the rights granted by the statute would be illusory since a public service corporation could only guarantee its right to build an extension by repeatedly going back to the Corporation Commission to secure amended or new certificates. This undermines the precise purpose of § 40–281(B) by making it necessary for a public service corporation to return to the Corporation Commission every time it wishes to make minor extensions and every time the city it serves annexes new territory.

In the instant case, pursuant to statute, the certificates of APS extended to the city limits of the towns it served and to areas contiguous to such city limits. These areas were part of the APS certificates and, as such, APS had the right of first refusal in areas extended by the statute. The trial court erred in concluding that APS did not have the right of first refusal in those areas.

2. Was B'N'B Within the Certificated Area of APS?

■ The B'N'B Restaurant is located 50 feet outside the city limits of Casa Grande. Before it moved, it was serviced by the District. After moving to a point 50 feet outside the Town of Casa Grande, it continued to receive service from the District but then decided to receive service from APS. APS claimed the right to extend service to it under the rule that the utility's certificated area expanded with the expansion of the city limits and that B'N'B was only 50 feet from the city limits of Casa Grande and, therefore, contiguous to the APS certificat-

---

1. "Run-along rights" are not specifically defined by the statute; nor do we find the rights defined in other jurisdictions. This Court requested the parties herein to define the term. The parties entered into a stipulation which has been of no help. We therefore construe the term "run-along rights" as rights that are contiguous to or part of certificates held by APS.

ed area. We agree with APS that the scope of its certificates expanded with the expansion of city limits and areas contiguous thereto. We disagree, however, that the B'N'B was contiguous to APS' certificated area.

We believe the two locations must be "in actual contact or touching." *Ehle v. Tenney Trading Co.*, 56 Ariz. 241, 245, 107 P.2d 210, 212 (1940).

The Supreme Court of North Dakota in construing a statute almost identical to that of Arizona noted:

Applying these various definitions of 'contiguous' and 'contiguous territory' to the wording of our statute ..., it refers to an area composed of one or more tracts of land owned by one or more persons, joined together by a common boundary on all or a part of one or more sides, common with the territory in which the utility was authorized to serve or in which it had lawfully commenced operation, and which area or territory of proposed service was not separated from the authorized territory by tracts 'receiving similar service from another utility ...'

*Williams Electric Co-op. v. Montana–Dakota Utilities Co.*, 79 N.W.2d 508, 520 (N.D.1956). We agree with the analysis made by that court.

The court of appeals, however, relied upon the case of *Brewer v. Heine*, 56 Ariz. 160, 169, 106 P.2d 495, 499 (1940), in defining the term "contiguous" as used in the statute. *Brewer*, however, involved a mining claim dispute and the placement of a "discovery monument" about 100 feet from where the discovery work was done. We do not believe *Brewer* is applicable.

We believe the court of appeals has incorrectly construed A.R.S. § 40–281(B) resulting in an overbroad interpretation of the word "contiguous." The area of service was limited by the city limits of Casa Grande and areas contiguous thereto, and B'N'B was not contiguous to the area encompassed by APS' certificate. Even though only 50 feet apart, the two areas were nevertheless apart and not contiguous.

■ This does not, however, exclude APS from serving B'N'B. The certificate of APS covers the "city of Casa Grande, Pinal County, Arizona and vicinity." Decision No. 4440 (May 23, 1928). Although we need not define the outer limits of the term "and vicinity," we can state that 50 feet is certainly within the "vicinity" and the decision of the trial court and the court of appeals allowing APS to serve B'N'B is affirmed based upon the certificate of APS to service Casa Grande "and vicinity."

3. Was Tierra Grande Within the Certificated Area of APS?

■ The court of appeals held that the certificate which allowed APS to serve both Eloy and Casa Grande was broad enough under A.R.S. § 40–281(B) to include Tierra Grande. Since Tierra Grande is not within the city limits of either Eloy or Casa Grande and is clearly not contiguous either to Eloy or "territories thereto" or to Casa Grande and "vicinity," we must look to the third provision of the statute which allows a public service corporation to extend the scope of its certificate "within or to territory already served by it, necessary in the ordinary course of its business." A.R.S. § 40–281(B). We do not believe the statute is broad enough to allow APS to provide service to Tierra Grande. As the Alabama Supreme Court has noted:

Consonant with the purpose of the statute requiring a certificate of convenience and necessity, the interpretation of the phrase 'ordinary extension of an existing system in the usual course of business' ... [does not include] the extension by the utility of the system into a community or territory not then served by said utility and where its purpose is not simply to enable the said utility to maintain good service or to provide better service for its existing system and customers ...

*See Alabama Power Co. v. Southern Pine Electric Cooperative*, 270 Ala. 453, 455, 118 So.2d 907, 909–10 (1960) (Simpson, J., dissenting).

The issue was not whether APS may serve the area, but whether it must first seek commission approval through the

grant of a certificate. This the trial court recognized when it directed APS to pursue a final decision from the Commission. The statutory exception has no application to the facts of this case.

The decision of the trial court enjoining the District from providing service to B'N'B is affirmed. The decision of the trial court enjoining APS from serving Tierra Grande is affirmed. The decision of the trial court that the areas of expansion allowed by A.R.S. § 40–281(B) are not within the certificate of APS is set aside. The decision of the trial court that APS does not have right of first refusal or run-along rights within these areas of expansion is also set aside.

### B. The Commission's Decision

On 11 March 1985, as directed by the trial court, APS filed an application with the Commission seeking an order declaring APS' certificates to include certain areas within Pinal County, or if the certificates did not include these areas that the Commission grant such an extension. The District and Richard and Joan Ungar filed motions to intervene which were granted. The Ungars, developers of Tierra Grande, supported the action of APS, and the District opposed the application by APS. On 11 June 1985, APS filed a second petition seeking recognition of its certificates or an extension of its areas of service.

Hearings were conducted in two phases. Phase I was to determine the scope of APS' existing certificates, and Phase II was to determine whether the certificates should be extended or a new certificate granted.

The Commission made the following findings in its Decision No. 55298:

1. APS's vague, general Certificates should include areas within one mile of the city limits of the present specified certificated areas granted by the Commission.

2. Pursuant to Decision No. 4440, APS has the right to serve B'N'B located within Casa Grande, Pinal County, Arizona.

3. APS does not have a right to serve Tierra Grande under any of its existing Certificates, but more specifically those rights arising under Decision No. 18694.

4. Under A.R.S. § 40–281(B), APS does not have any rights to extend its service to Tierra Grande.

5. A.R.S. § 40–281(B) does not grant public service corporations authority to extend the confines of their Certificates without procuring an additional grant of authority from the Commission.

6. A.R.S. § 40–281(B) grants public service corporations the right to serve *contiguous* areas *outside their authorized Certificate.*

7. Pursuant to the Commission's authority granted to it by Article XV of the Arizona Constitution and A.R.S. § 40–204(B), the Commission shall require APS to work with its staff in order that the Commission's maps of APS's certificated areas shall correctly reflect the boundaries of its Certificates.

The Commission also stated:

We do not agree with the court of appeals conclusion that APS or any public utility can unilaterally expand its territory if it is not touching upon the territory into which it plans to expand.

Decision No. 55298.

1. Was the Commission Bound by the Decision of the Court of Appeals?

The Commission in an exhaustive and well-written decision stated in part:

A utility company is unique in nature in that it is a regulated monopoly that we are charged by the Constitution with regulating. We are also charged with the plenary authority to interpret the boundaries of Certificates issued by the Commission. We do not agree with the Court of Appeals conclusions that APS or any public utility can unilaterally expand its territory if it is not touching upon the territory into which it plans to expand. The utility must seek Commission approval prior to extending its service. Otherwise, development could take place

in a hop scotch pattern with no uniformity, and force uneconomical development upon the rate payers and in some instances, the utility. As regulators, we must consider the ultimate costs, and also the wishes of the public. Duplication of service by a utility is a costly affair when another alternative to the utility's expansion is available as is the case with ED–2 [The District] in its provision of electrical service to Tierra Grande.

However, we are limited in this particular case to the result ordered by the Court of Appeals decision at least insofar as it applies to the parties before us. We believe we are constrained in this case from reaching a result at variance with that of the Court of Appeals. While the Court of Appeals decision may govern the current dispute between APS and ED–2 [The District], it is nonetheless a memorandum decision and entitled to no precedential value in future cases. Therefore, the Commission will abide by the result reached by the Court of Appeals while noting its disagreement with that decision. Furthermore, the Commission will set forth what it believes to be the appropriate requirements and standards for the parties to follow with regard to their future conduct relative to extensions of service.

 We agree with the Commission that it is bound by a final decision of the court of appeals and the decision of the trial court as between the District and APS.[2] It is, however, not binding as to future determinations of areas encompassed by a certificate. The Commission may, in the future, consider a petition from APS to extend the scope of its certificate. This is clearly within the jurisdiction of the Commission, as the trial court noted. So long as the adjudicated rights of the District are not violated by such certificate, the Commission may allow an extension and expansion of the area to be serviced by APS.[3]

The courts have jurisdiction to review a decision of the Commission. However, under A.R.S. § 40–254, the courts may only affirm, modify, or set aside the decision of the Commission. *Arizona Corporation Commission v. Fred Harvey Transp. Co.*, 95 Ariz. 185, 388 P.2d 236 (1964). The decision of the Commission in Decision No. 55298 is affirmed.

GORDON, C.J., FELDMAN, V.C.J., and HOLOHAN, J., concur.

NOTE: Justice JAMES MOELLER did not participate in the determination of this matter.

---

2. The question was raised as to whether a memorandum decision which is unpublished and uncitable could be the law of the case. It can. A memorandum decision is just as binding on the parties as a published opinion.

3. We note that here the statutes have provided for areas of conflicting jurisdiction that oftentimes result in intense "turf" battles. The attitude of the Arizona Corporation Commission in seeking to work rationally within the system is commendable. This was true even when there was reason to believe that an erroneous decision had been made in the Commission's area of expertise.