BARRY R. HAMLIN, Plaintiff-Appellant, v. HARBAUGH ENTERPRISES, INC., *et al.*, Defendants-Appellees.

Third District   No. 3—01—0408

Opinion filed August 7, 2001.

James L. Hafele (argued) and Scott E. Umland, both of James L. Hafele & Associates, of Peoria, for appellant.

Kenneth M. Snodgrass, Jr. (argued), and David L. Wentworth II, both of Hasselberg, Williams, Grebe & Snodgrass, of Peoria, for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

Plaintiff Barry Hamlin filed this action against defendants Harbaugh Enterprises, Inc., Pamela Harbaugh and Charles Cain (collectively Harbaugh) to recover damages he allegedly suffered after Pam terminated his employment with Harbaugh. Count I of Barry's complaint was a petition brought pursuant to section 12.56(a) of the Business Corporation Act of 1983 (Act) (805 ILCS 5/12.56(a) (West 2000)), which provides remedies for nonpublic corporate shareholders.

The court determined that an "election" to purchase Barry's shares, filed by Harbaugh pursuant to section 12.56(f) of the Act, was timely filed. The court then entered a stay of the entire proceedings at Harbaugh's request, pursuant to section 12.56(f)(6). Barry appealed. We hold that an election not filed within 90 days of the initial filing of a petition brought pursuant to section 12.56(a) is not timely filed. Additionally, a trial court should hold an evidentiary hearing prior to finding that the filing of an election brought outside the 90-day statutory period is equitable and prior to staying any counts of the complaint not brought pursuant to section 12.56(a) of the Act. Thus, we reverse.

## FACTS

Barry initially filed a three-count complaint. Count I was an ac-

tion against the corporation pursuant to section 12.56(a) of the Act on the basis of fraud and oppression. In count I, Barry alleged that he and Pam entered into an oral contract to commence a corporation to acquire and operate 17 Pizza Hut restaurants as franchisees. Pam was to be president while Barry was to be secretary of the corporation. Barry was to receive 5% of the shares of the corporation.

Pursuant to the contract, Barry could earn an additional 5% ownership in the corporation. Barry was to be an employee of the enterprise and, in exchange for services to the corporation, Barry was to receive a salary of $80,000 per year plus bonuses. Barry alleged that sometime after acquiring the restaurants, Pam ordered Barry and his wife to sign a shareholders' agreement or he would not receive his shares of stock. Immediately thereafter, Barry was terminated by Pam.

As relief, Barry requested that the shareholders' agreement be set aside, that his termination be set aside, that he be reinstated, that any director or officer who engaged in conspiratorial or oppressive conduct be removed, that an accounting be taken, that Barry be awarded damages, that the corporation purchase Barry's shares, that the corporation be dissolved, and that Barry recover reasonable expenses and punitive damages.

Count II sought damages for breach of contract and count III alleged that Pam and Charles had defamed Barry. The trial court granted Harbaugh's motion to dismiss the complaint. Thereafter, Barry filed an amended complaint. Count I again sought relief against Harbaugh pursuant to section 12.56(a) of the Act. Counts II and III were actions for civil conspiracy against Pam and Charles, respectively. Count IV was an action for slander *per se*. Count V was an action against Pam and Charles for breach of fiduciary duty. Count VI sought compulsory examination of corporate records.

Harbaugh answered count I but filed a motion to dismiss the remaining common law counts. Barry sought leave to file a second amended complaint wherein he proposed to change causes of action, to add new causes of action and new parties defendant, and to seek additional damages.

Harbaugh then filed an election to purchase Barry's shares pursuant to section 12.56(f) of the Act. The trial court determined that the election was timely filed or, alternatively, that it was equitable to allow the filing of the election. Within the election, Harbaugh proposed to pay Barry in excess of the value of his shares to settle all claims against it. Because the parties did not agree on the value of Barry's shares, Harbaugh sought a stay pursuant to section 12.56(f)(6) to allow the trial court to determine the value. The court stayed the entire proceedings and Barry filed this interlocutory appeal.

## ANALYSIS

●1 Both parties agree that this appeal of the trial court's stay is as of right pursuant to Supreme Court Rule 307(a)(1). 188 Ill. 2d R. 307(a)(1). In an interlocutory appeal, the scope of review is normally limited to an examination of whether the trial court abused its discretion in granting or refusing the requested relief. Where the question presented is one of law, however, a reviewing court determines it independently of the trial court's judgment. *In re Lawrence M.*, 172 Ill. 2d 523, 670 N.E.2d 710 (1996).

●2 Initially, Barry urges this court to apply the "exceptionally stringent" standard determined to be applicable to the appointment of a receiver *pendente lite* in *Poulakidas v. Charalidis*, 68 Ill. App. 3d 610, 386 N.E.2d 405 (1979). In light of the supreme court's unambiguous statement of the proper standard to apply to interlocutory appeals, we reject Barry's request.

The first issue we are asked to address is whether the trial court erred when it determined that Harbaugh had timely filed the election or, in the alternative, that it was equitable to allow the filing of the election.

At the outset, Harbaugh suggests that this court only has authority to determine the appropriateness of the stay, not the election, as this case is on appeal pursuant to Supreme Court Rule 307(a)(1), providing for interlocutory appeals from the issuance of injunctions. 188 Ill. 2d R. 307(a)(1).

The statute at issue provides that if, after an election is filed, the parties cannot agree upon the value of the shareholder's shares, the court must stay the proceedings to determine the value. 805 ILCS 5/12.56(f)(6) (West 2000). As such, the propriety of the stay is wholly dependant upon whether the court properly allowed the filing of the election. Accordingly, this court will address the issues Barry raises as to the propriety of the election first.

Barry's main contentions are as follows: (1) his claims of fraud and oppression make a section 12.56(f) election and stay inappropriate; (2) the election was not timely filed within 90 days; (3) Harbaugh was required to, but did not, seek leave of court to file the election outside the 90-day filing period; and (4) the court should have conducted a hearing before determining it was equitable to allow the filing of the untimely election. We note that section 12.56(f) is a relatively recent enactment and, as such, each of the issues raised by Barry is one of first impression in Illinois.

### A. Fraud and Oppression

●3 Barry's first argument, that his allegations of fraud and oppres-

sion make the use of the election procedure in section 12.56(f) inappropriate, is directly contrary to the language of the Act.

Section 12.56 provides that in an action by a shareholder wherein it is established that the directors have acted in a manner that is "illegal, oppressive, or fraudulent" (805 ILCS 5/12.56(a)(3) (West 2000)), the court may order the corporation to purchase the shareholder's shares for fair value (805 ILCS 5/12.56(b)(11) (West 2000)), or the corporation may pursue an election on its own initiative (805 ILCS 5/12.56(f) (West 2000)).

Nothing in section 12.56(f), pertaining to the filing of an election, indicates that it is not to be applied in cases of fraud or oppression. Indeed, in order for a corporation to file an election pursuant to section 12.56(f), there must already be a suit pending, filed against the corporation by a shareholder, one basis for that action being that the corporation engaged in fraud or oppression. Accordingly, we reject Barry's first contention.

### B. 90-Day Filing Period

Barry next contends that the court erred in determining that Harbaugh timely filed the election within the 90-day statutory period allowing for elections as of right. Harbaugh responds that the election was properly filed within 90 days of a "legally sustainable petition." A decision on this issue requires this court to interpret section 12.56 of the Act.

●4 The primary rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the true intent of the legislature. *Dunahee v. Chenoa Welding & Fabrication, Inc.*, 273 Ill. App. 3d 201, 652 N.E.2d 438 (1995). In determining legislative intent, a court should first consider the statutory language. A court may look beyond statutory language when it is ambiguous or when a literal interpretation of the statute would lead to an absurd result. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 678 N.E.2d 1009 (1996).

●5 Section 12.56(f) provides in relevant part:

> "At any time within 90 days after the filing of the petition under this Section, or at such time determined by the court to be equitable, the corporation or one or more shareholders may elect to purchase all, but not less than all, of the shares owned by the petitioning shareholder for their fair value." 805 ILCS 5/12.56(f) (West 2000).

Here, Barry filed his complaint, count I of which included the section 12.56(a) petition, on April 5, 2000. Harbaugh filed a motion to dismiss rather than an election, and the court granted that motion. Barry then filed an amended complaint on July 20, 2000, again including the section 12.56(a) petition as count I. Harbaugh answered count

I but filed a motion to dismiss the remaining counts. Harbaugh then filed an election on October 12, 2000. The election was filed within 90 days of Barry's amended complaint but was filed 189 days after his initial petition.

●6 We reject Harbaugh's contention that its election was timely because it was filed within 90 days of a legally sustainable petition. Harbaugh does not cite any support of its position that the 90-day limitations period does not commence running until the filing of a viable petition. Nor does section 12.56(f), providing that an election must be filed "within 90 days after the filing of the petition under this Section" (805 ILCS 5/12.56(f) (West 2000)), indicate that parties may withhold the filing of an election based upon speculation that a shareholder's petition is not legally sustainable. Indeed, Harbaugh's interpretation would read language into the statute that simply does not exist. Harbaugh's argument is best left to the legislature and not this court. See *Newland v. Budget Rent-A-Car Systems, Inc.*, 319 Ill. App. 3d 453, 744 N.E.2d 902 (2001) (Courts must not depart from a statute's plain language by reading into it exceptions, limitations or conditions the legislature did not express).

Additionally, we note that section 12.56(f) provides for the filing of an election "at such time determined by the court to be equitable." 805 ILCS 5/12.56(f) (West 2000). This provision eliminates any incongruous results that may spring from a strict interpretation of the 90-day statutory period. For instance, in the event a plaintiff files a petition pursuant to section 12.56(a) but, for legitimate reasons, is unable to obtain service until 75 days later, the defendant corporation is not left with the sole option of filing an election within 15 days or forever be barred from seeking to file the election.

Accordingly, we hold that Harbaugh's election, filed some 189 days after Barry's initial petition, was not timely filed within the 90-day statutory period for the filing of elections as of right.

## C. Equitable Filing Period

●7 We turn now to Barry's next contention, that because Harbaugh's election was not filed within the 90-day limitations period of section 12.56(f), it was required to seek leave of court before filing the election on equitable grounds.

As noted, section 12.56(f) states only that an election not filed within 90 days must be filed "at such time determined by the court to be equitable." 805 ILCS 5/12.56(f) (West 2000). The statute is silent as to the proper procedure to be utilized by a party filing an election after 90 days. Section 12.56(f) was based upon section 14.34 of the Model Business Corporation Act (Model Act) (3 ABA Model Business Corpora-

tion Act Ann. § 14.34 (3d ed. Supp. 1998-99)). The official comment to section 14.34 provides in part:

> "The election to purchase is wholly voluntary, but it can be made as a matter of right within 90 days after the filing of the petition under section 14.30(2). After 90 days, leave of court is required." 3 ABA Model Business Corporation Act Ann. § 14.34, Official Comment 2, at 14—148 (3d ed. Supp. 1998-99).

Thus, it is clear that the drafters of the Model Act intended that a corporation seek leave to file an election after the 90-day statutory period as Barry suggests. Accordingly, we hold that corporations filing an election after 90 days from the filing of the section 12.56(a) petition must seek leave of court before filing for the election on equitable grounds.

### D. Hearing on Equitable Filing

Finally, we turn to Barry's last contention, that the court was required to conduct a hearing to assess the equities before allowing Harbaugh to file its untimely election.

Neither section 12.56(f) of the Act nor the official comments to section 14.34 of the Model Act provide any guidance as to the procedures to be utilized by the courts in determining the equities in allowing the filing of an election after 90 days. The requirement that a party seek leave of court before filing such election, however, lends credence to the argument that courts should conduct a hearing to apprise themselves of all relevant facts.

Here, the court order indicates as follows: "the Court finds that the Election is timely filed. In the alternative, the Court finds it is equitable to allow the filing of the Notice of Election ***." This court has already determined that the filing of the election did not occur within the 90-day period for filings as of right. Because the court failed to hold an evidentiary hearing on the equities of allowing the filing after 90 days, there exists little evidence in the record for this court to rely upon in sustaining the trial court's conclusion.

If the above-quoted language of the court had been the result of a thorough and informed consideration of the equities involved in allowing Harbaugh's untimely election, the court would have been justified in approving the filing. It is essential, however, that this court have some basis for distinguishing between a well-reasoned decision arrived at after a complete consideration of all relevant factors, and mere boilerplate approval properly phrased but unsupported by an evaluation of all relevant facts or law. See *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 20 L. Ed. 2d 1, 88 S. Ct. 1157 (1968) (remanding case to trial court to consider all relevant facts and law in approving reorganization plan of corporation under Bankruptcy Act 11 (U.S.C. §§ 501-676 (1964))).

●8 Accordingly, we hold that the trial court must conduct an evidentiary hearing to consider all relevant facts before approving the filing of an election on equitable grounds. Therefore, pursuant to this court's equitable powers under Supreme Court Rule 366 (155 Ill. 2d R. 366), we vacate the order of the trial court that allowed the filing of Harbaugh's election and, upon Harbaugh's motion for leave to file the late election, the court is directed to conduct a hearing on the equities. See *Ransom v. A.B. Dick Co.*, 289 Ill. App. 3d 663, 682 N.E.2d 314 (1997) (Supreme Court Rule 366 provides appellate courts with equitable powers to vacate a circuit court's order and remand the matter for further hearing).

Having vacated the court's order allowing the election, the order staying the proceedings cannot stand. In an effort to avoid errors on remand, we will consider whether the trial court abused its discretion when it stayed count I of Barry's complaint filed pursuant to section 12.56(a), as well as the remaining common law counts.

Section 12.56(f)(6) provides that if the parties are unable to reach an agreement on the value of the shares, the "court, upon application of any party, shall stay the proceeding under subsection (a) and shall determine the fair value of the petitioner's shares." 805 ILCS 5/12.56(f)(6) (West 2000).

Thus, there is no doubt that a trial court possesses the power to stay any proceedings brought pursuant to section 12.56(a) upon application of one of the parties stating that the parties are unable to agree upon a fair value for the shares. Indeed, the trial court is required to do so. See 805 ILCS 5/12.56(f)(6) (West 2000).

It is not equally clear from the Act, however, that the court can stay additional claims not brought pursuant to section 12.56(a). The official comment to section 14.34 provides that once the court has issued a stay, determined the value of the shares, and entered an order, the result is a dismissal of the dissolution proceedings. The dismissal terminates all rights and claims of the petitioner as a shareholder; however, "claims asserted by the petitioner in any nonshareholder capacity, such as claims for back wages or indemnification, are not affected by the entry of an order." 3 ABA Model Business Corporation Act Ann. § 14.34, Official Comment 4(c), at 14—152 (3d ed. Supp. 1998-99).

It is apparent that the drafters of the Model Act intended for any additional claims of the shareholder not brought pursuant to section 12.56(a) to continue through the adjudication process even after the shareholder's shares have been purchased and the section 12.56(a) petition dismissed.

Still, we are cognizant of the supreme court's holding that a trial

court has the inherent power to issue a stay, which is distinctly equitable in nature, during the pendency of a case before it. *Ardt v. Illinois Department of Professional Regulation*, 154 Ill. 2d 138, 607 N.E.2d 1226 (1992). Indeed, section 12.56(c) of the Act provides that the remedies available within the Act are not exclusive of other legal and equitable remedies that the court may impose. 805 ILCS 5/12.56(c) (West 2000).

Here, the trial court stayed the entire proceedings on the basis that many of Barry's claims were interrelated and section 12.56 did not anticipate piecemeal litigation. No hearing was conducted at which the court weighed the equities in staying the proceedings. Subsequently, we again find little evidence in the record upon which to sustain the trial court's decision that the equities favored a stay of the entire proceeding. Accordingly, for the same reasons as set forth above, we hold that the trial court should have conducted a hearing in order to determine the appropriateness of staying the entire proceeding. In determining so, we do not hold that a trial court may never stay claims not brought pursuant to section 12.56(a), only that there can be no informed and independent judgment as to the equitableness of such a stay without the court apprising itself of all relevant facts.

In conclusion, we note that any arguments raised by the parties within the context of the larger issues discussed throughout this opinion and not heretofore addressed are without merit and warrant no further discussion.

For the foregoing reasons, the judgment of the circuit court of Peoria County is vacated, and this cause is remanded for further proceedings consistent with this opinion.

Vacated and remanded.

LYTTON and SLATER, JJ., concur.