No. 5-03-0059--Midkiff, M.D., et al. v. Gingrich, M.D.

(text box: 1) NO. 5-03-0059

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

CHRISTINA L. MIDKIFF, M.D., and )  Appeal from the

MARLENE H. FREEMAN, M.D., )  Circuit Court of

)  Madison County.

Plaintiffs and Counterdefendants-Appellees, )

)

v. )  No. 02-CH-223

)
 

TINA M.F. GINGRICH, M.D., and TINA M.F. )

GINGRICH, M.D., P.C., )  Honorable 
 

)  Ralph J. Mendelsohn,

Defendants and Counterplaintiffs-Appellants. )  Judge, presiding.

___________________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiffs, Dr. Marlene Freeman and Dr. Christina Midkiff, filed a complaint against the defendants, Dr. Tina Gingrich and Tina M.F. Gingrich, M.D., P.C., seeking, among other things, nonpublic shareholder relief pursuant to section 12.56 of the Business Corporation Act of 1983 (Act) (805 ILCS 5/12.56 (West 2002)).  Dr. Gingrich filed a notice of election to purchase the plaintiffs' shares (see 805 ILCS 5/12.56(f) (West 2002)).  The trial court granted the plaintiffs' motion to strike Dr. Gingrich's notice of election, finding that it was defective because it stated the amount at which she was willing to purchase the shares as a formula rather than as a numerical figure.  The court granted Dr. Gingrich's motion to certify questions for interlocutory appellate review pursuant to Illinois Supreme Court Rule 308 (155 Ill. 2d R. 308).  On appeal, Dr. Gingrich argues that the trial court erred in (1) holding that section 12.56 requires a notice of election to state a specific numerical figure as the amount at which a shareholder is willing to purchase stock, (2) denying Dr. Gingrich's motion to reconsider its order granting the plaintiffs' motion to strike her election, (3) denying her alternative motion for leave to file an amended notice of election after the time period for filing a notice of election had expired, and (4) ordering a stay for only those portions of the parties' litigation that related to the shareholder remedy.  We reverse.

I. BACKGROUND

In April 1994, Dr. Gingrich incorporated her obstetrics-gynecology (ob-gyn) practice as Tina M.F. Gingrich, M.D., P.C., which has operated since then under the name Maryville Women's Center.  In 1997, Dr. Gingrich hired Dr. Freeman, and in 1998, she hired Dr. Midkiff.  On October 1, 1999, the three entered into a stock purchase agreement.  Under the agreement, all three became equal owners of the corporation; however, the agreement gave Dr. Gingrich veto power.  This resulted in a deadlock in 2001.

On March 30, 2002, the plaintiffs filed a four-count complaint seeking (1) nonpublic shareholder relief under section 12.56 of the Act, (2) actual and punitive damages for breach of fiduciary duty, (3) a declaratory judgment ruling that a noncompetition clause contained in the stock purchase agreement is unenforceable, and (4) declaratory and injunctive relief relating to the operation of the ob-gyn practice.  On April 17, Dr. Gingrich filed an answer and counterclaim.  Her counterclaim sought damages for breach of contract, breach of fiduciary duty, intentional infliction of emotional distress, defamation, and civil conspiracy, and it also sought a declaratory judgment ruling that the stock purchase agreement–including the covenant not to compete–valid.

On May 29, 2002, Dr. Gingrich filed a notice of election to purchase the plaintiffs' shares.  See 805 ILCS 5/12.56(f) (West 2002).  In her notice of election, Dr. Gingrich offered to purchase the shares at a price to be determined pursuant to a formula included in the stock purchase agreement for valuing shares.  That formula provides that the value of the shares is the fair value of the corporate medical and office equipment and furniture and fixtures plus the average receivable collection percentage for the previous 12 months multiplied by the total accounts receivable divided by the number of shares.  She alleged in her notice of election that the precise dollar amount would be readily ascertainable once certain tax documents were obtained.

The plaintiffs did not respond to the notice of election within the 30 days provided by statute for parties to agree to the fair value of the shares to be purchased (805 ILCS 5/12.56(f)(5) (West 2002)).  In fact, they never expressly accepted or rejected Dr. Gingrich's offer to purchase.  On August 20, 2002, they filed a motion to strike the notice of election, arguing that it was deficient because (1) it failed to state a specific dollar amount at which Dr. Gingrich was willing to purchase the shares and (2) it purported to add terms of purchase in addition to the sale price.  Specifically, the notice of election asked the court to impose as terms of a sale (1) a covenant not to compete similar to the one contained in the stock purchase agreement and (2) a requirement that Dr. Midkiff and Dr. Freeman not take patient files with them without patient consent.

On August 27, 2002, the court held a hearing on the plaintiffs' motion to strike Dr. Gingrich's notice of election.  The court agreed with the plaintiffs and granted the motion.  In so ruling, the court noted that although Dr. Gingrich alleged that the numerical value of the shares was "readily ascertainable" using the formula, no one had been able to state an amount.  At this point, Dr. Gingrich's attorney stated that the formula yielded a value of $113,183 per share.

Dr. Gingrich moved orally for leave to file an amended notice of election stating a specific dollar amount, arguing that she had attempted in good faith to comply with the statutory requirement that she state an "amount" at which she was willing to purchase the shares and that the 90-day period for filing a timely notice of election (805 ILCS 5/12.56(f) (West 2002)) had run out because the plaintiffs waited until the end of that period to respond to her notice of election.  The court declined to rule on the motion at that time, instead offering to set another hearing at which to consider it.

On September 5, Dr. Gingrich filed both a motion to reconsider the court's August 27 ruling and a supplemental/alternative motion for leave to file an amended election.  On September 20, the court heard arguments and denied both motions.  The court agreed with Dr. Gingrich, however, that the issues presented involved questions of law on which there were substantial grounds for a difference of opinion.  The court therefore granted her motion to certify questions for appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).  In light of the interlocutory appeal, the court stayed the proceedings relating to section 12.56 of the Act but did not stay the proceedings on any of the parties' other claims.

On January 15, 2003, the court entered a written order certifying the following questions for appeal: (1) whether the trial court erred in ruling that section 12.56(f) of the Act (805 ILCS 5/12.56(f) (West 2002)) requires a specific dollar amount and cannot be satisfied by reference to a formula, (2) whether the court erred in denying Dr. Gingrich's motion to reconsider, (3) whether the court erred in denying Dr. Gingrich leave to file an amended election, and (4) whether the court erred in staying only the proceedings related to section 12.56.  We initially denied Dr. Gingrich's petition for leave to appeal (Midkiff v. Gingrich, No. 5-03-0059 (March 11, 2003) (unpublished order)); however, the Illinois Supreme Court vacated our order on January 28, 2004, and directed us to consider the merits of Dr. Gingrich's appeal (
Midkiff v. Gingrich
, 207 Ill. 2d 606, 801 N.E.2d 947 (2004) (supervisory order)).  We answer the first and fourth certified questions in the affirmative.  Because we reverse the order granting the plaintiffs' motion to strike Dr. Gingrich's notice of election, we need not address the court's ruling on Dr. Gingrich's motion to reconsider as a separate issue, and her motion to file an alternative or supplemental notice of election is moot.

II. DISCUSSION

A. Motion to Strike the Notice of Election

Dr. Gingrich first argues that the trial court erred in granting the plaintiffs' motion to strike her notice of election.  Our resolution of this question calls for us to construe, for the first time, section 12.56(f) of the Act.  That statute provides, in relevant part:

"At any time within 90 days after the filing of the petition under this Section, or at such time determined by the court to be equitable, the corporation or one or more shareholders may elect to purchase all *** of the shares owned by the petitioning shareholder for their fair value.  An election pursuant to this Section 
shall state in writing the amount which the electing party will pay for the shares.
"  (Emphasis added.)  805 ILCS 5/12.56(f) (West 2002).

It is the last sentence that is at issue.  More precisely, we are asked to determine the specificity with which an electing shareholder must state in writing the 
amount
 she is willing to pay for the shares in order to satisfy the requirement.

Our primary goal in statutory construction is to ascertain and effectuate the intent of the legislature.  The best evidence of legislative intent is the words of the statute itself, which should be given their plain and ordinary meaning.  We need only go beyond the words of the statute itself if we cannot discern the intent of the legislature from the statutory language.  
Paris v. Feder
, 179 Ill. 2d 173, 177, 688 N.E.2d 137, 139 (1997).  Looking to the plain and ordinary meaning of the word "amount" does not help us to resolve this question because the word has different (albeit similar) meanings, one of which supports the plaintiffs' position and one of which supports the defendants' position.  Random House Webster's College Dictionary defines 
amount
 as "the sum total of two or more quantities or sums" and "quantity; measure ***."  Random House Webster's College Dictionary 46 (1991).  Merriam-Webster Online Dictionary defines 
amount
 as "the total number or quantity: AGGREGATE" and "the quantity at hand or under consideration."  Merriam-Webster Online Dictionary, at 
http://www.m-w.com/cgi-bin/dictionary
 (last visited Feb. 15, 2005).  In describing the term's usage, both dictionaries specifically distinguish between the usage of the word 
amount
 and the usage of the word 
number
.  Merriam-Webster Online Dictionary, at 
http://www.m-w.com/cgi-bin/dictionary
 (last visited Feb. 15, 2005) (noting that the word 
number
 is mainly used with countable nouns while 
amount
 is mainly used with uncountable or mass nouns); Random House Webster's College Dictionary 46 (1991) (noting the same distinction).  Where statutory language is subject to more than one reasonable interpretation, it is ambiguous.  
Hyatt Corp. v. Sweet
, 230 Ill. App. 3d 423, 429, 594 N.E.2d 1243, 1247 (1992).  Thus, we must look beyond the words of the statute to discern the legislature's intent.

In construing a statute, we must consider the problem it was enacted to remedy.  See 
Hyatt Corp.
, 230 Ill. App. 3d at 430, 594 N.E.2d at 1247.  We must evaluate the statute as a whole, interpreting each provision in connection with every other provision.  
Paris
, 179 Ill. 2d at 177, 688 N.E.2d at 139.  We must also interpret the statute in a manner that will avoid absurd results.  
Burger v. Lutheran General Hospital
, 198 Ill. 2d 21, 59, 759 N.E.2d 533, 555 (2001).  Construing the provision at issue in concert with the entire nonpublic shareholder remedy statute, we find that the legislature's intent in providing nonpetitioning shareholders the option of filing a notice of election to purchase shares is to avoid the harsh remedy of a corporate dissolution.  Another section of the statute provides that a dissolution is to be a remedy of last resort.  805 ILCS 5/12.56(b)(12) (West 2002).  This policy favoring the purchase of shares over a dissolution is further promoted by provisions allowing the court to order a sale of stock even if no shareholder files a notice of election (805 ILCS 5/12.56(e) (West 2002)) and making a notice of election to purchase shares irrevocable (805 ILCS 5/12.56(f)(1) (West 2002)).  A liberal interpretation of the procedural requirements for filing a notice of election obviously better serves this interest because fewer notices of election will fail than under a more narrow construction.  A broader interpretation would also be in line with our general policy of liberally construing pleading requirements.  See 
Illinois Bell Telephone Co. v. Dynaweld, Inc.
, 70 Ill. App. 3d 387, 391, 388 N.E.2d 157, 160 (1979). 

These observations do not resolve the question, however.  Rather, we must consider why our legislature chose to add the specific provision at issue–that is, the requirement that a notice of election state in writing an amount the electing shareholder is willing to pay for the shares.  The Model Business Corporation Act provision upon which our statute is based (Model Bus. Corp. Act §14.34 (1998); see 
Hamlin v. Harbaugh Enterprises, Inc.
, 324 Ill. App. 3d 612, 618-19, 755 N.E.2d 993, 998 (2001) (noting that section 12.56(f) of the Act was based on section 14.34 of the Model Business Corporation Act)) does not contain a comparable provision.  It merely provides that one or more shareholders or the corporation itself may elect to purchase the petitioning shareholder's shares "at the fair value of the shares."  Model Bus. Corp. Act §14.34(a) (1998).  The same is true of the statutes from other jurisdictions that Dr. Gingrich has cited as supporting her position.  Cal. Corp. Code §2000(a) (West 2002); Minn. Stat. §302A.751(2) (2002); N.Y. Bus. Corp. Law §1118(a) (McKinney 2002).  (We note that because these statutes do not contain provisions similar to the one here at issue in spite of their similarity in most other respects to our statute, we do not find helpful any of the California, Minnesota, or New York cases Dr. Gingrich has cited, and we accordingly decline to discuss them.)

What these statutes and the Model Business Corporation Act do have in common with our statute is a provision allowing the parties a time to attempt to agree to the fair value of the stock to be sold and requiring the court to determine the fair value only if the parties fail to agree.  805 ILCS 5/12.56(f)(5) (West 2002); Cal. Corp. Code §2000(b) (West 2002); Minn. Stat. §302A.751(2) (2002); N.Y. Bus. Corp. Law §1118(b) (McKinney 2002); Model Bus. Corp. Act §14.34(c) (1998); see also Model Bus. Corp. Act §14.34, Comment 4a (1998) (referring to the 60-day period provided under the Model Business Corporation Act as a "negotiating period").  Logically, we glean from this a legislative intent to give the parties a chance to agree to the price and terms of the stock sale, if possible, rather than requiring the court to impose a price and terms.  The requirement that an electing shareholder state in writing the amount she is willing to pay for the shares helps in this process by providing a starting point from which the parties may negotiate.  As a practical matter, shareholders in closely held corporations will rarely seek a remedy under section 12.56 unless there is discord among the shareholders.  Under those circumstances, the stated amount, whether expressed as a formula or a specific dollar figure, will in most cases serve only as that–a starting point for negotiations.  To some parties, an exact dollar figure might be a more useful starting point for negotiations, while for others, a formula such as that in Dr. Gingrich's notice of election might be more helpful than an exact dollar figure given with no explanation of how the electing shareholder arrived at the figure or why she believes it to be the fair value of the shares.  We think either method of stating an amount can serve as a valid first step in negotiations over the fair value of the shares.  Accordingly, we conclude that Dr. Gingrich's notice of election complied with the requirements of the statute.

B. Motion to Stay the Proceedings

Dr. Gingrich next contends that the trial court abused its discretion by staying only the proceedings related to her notice of election during the pendency of this appeal.  In 
Hamlin
, the plaintiff sought shareholder relief under section 12.56, as well as the compulsory examination of corporate records and damages for slander, civil conspiracy, and breach of fiduciary duty.  When the parties did not agree on the value of the plaintiff's shares, the corporation and two other shareholders petitioned for a stay of the proceedings to allow the court to determine the value, and the trial court stayed the entire proceedings.  
Hamlin
, 324 Ill. App. 3d at 615, 755 N.E.2d at 995.  On interlocutory appeal, the Third District considered whether the court abused its discretion in staying the entire proceedings.  
Hamlin
, 324 Ill. App. 3d at 620, 755 N.E.2d at 999.  The court first noted that the Act authorizes–and, in fact, requires–trial courts to stay only those proceedings arising under section 12.56.  
Hamlin
, 324 Ill. App. 3d at 620, 755 N.E.2d at 999 (citing 805 ILCS 5/12.56(f)(6) (West 2000)).  The court noted, however, that trial courts have the inherent authority to stay any proceedings before them.  
Hamlin
, 324 Ill. App. 3d at 620-21, 755 N.E.2d at 999 (citing 
Ardt v. Illinois Department of Professional Regulation
, 154 Ill. 2d 138, 146, 607 N.E.2d 1226, 1230 (1992)).

The 
Hamlin
 court found that the record before it was insufficient for it to determine whether or not the trial court had properly exercised its discretion in ordering the entire proceedings stayed.  
Hamlin
, 324 Ill. App. 3d at 621, 755 N.E.2d at 999.  As a result, the appellate court held that the trial court should have held a hearing to determine whether a stay of the additional claims was equitable.  
Hamlin
, 324 Ill. App. 3d at 621, 755 N.E.2d at 999-1000.

In this case, the court below held a hearing at which the parties argued about the possible effect of the outcome of the section 12.56 claims on the other pending claims.  In ordering only the section 12.56 claims stayed, the court cited language in 
Hamlin
 (
Hamlin
, 324 Ill. App. 3d at 620, 755 N.E.2d at 999) and stated, "It is not equally clear that the Act permits a trial court to stay additional proceedings, however."  As noted, the 
Hamlin
 court recognized that regardless of whether there is statutory authority to stay additional counts, Illinois case law gives trial courts the authority to stay them if it is equitable to do so.  It is not clear whether the trial court ruled as it did because it misinterpreted 
Hamlin
 to preclude a stay of the other pending claims or if it exercised its discretion and determined that equity favored staying only the section 12.56 proceedings.  On remand, therefore, we direct the court to clarify the basis of its ruling and to consider the parties' arguments about the effect of the section 12.56 claims on the other counts and vice versa.

III. CONCLUSION

For the foregoing reasons, we reverse the order of the trial court striking defendant Gingrich's notice of election to purchase shares, and we remand for further proceedings consistent with this opinion.

Certified questions answered; order reversed; cause remanded.

HOPKINS and KUEHN, JJ., concur.

NO. 5-03-0059

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

CHRISTINA L. MIDKIFF, M.D., and )  Appeal from the

MARLENE H. FREEMAN, M.D., )  Circuit Court of

)  Madison County.

Plaintiffs and Counterdefendants-Appellees, )

)

v. )  No. 02-CH-223

)
 

TINA M.F. GINGRICH, M.D., and TINA M.F. )

GINGRICH, M.D., P.C., )  Honorable 
 

)  Ralph J. Mendelsohn,

Defendants and Counterplaintiffs-Appellants. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: February 17, 2005

___________________________________________________________________________________

Justices
: Honorable Melissa A. Chapman, J.

Honorable Terrence J. Hopkins, J., and

Honorable Clyde L. Kuehn, J.,

Concur

___________________________________________________________________________________

Attorneys
 George E. Marifian, William J. Niehoff, Mathis, Marifian, Richter & Grandy, 

for
 Ltd., 23 Public Square, Suite 300, Belleville, IL 62226; Charles W. Chapman, 

Appellants
 Charles W. Chapman, Chartered, 301 Evans Avenue, Wood River, IL 62095

___________________________________________________________________________________

Attorneys
 Mark C. Goldenberg, Elizabeth V. Heller, W. Stanley Faulkner, Goldenberg, 

for
 Miller, Heller & Antognoli, P.C., 2227 South State Route 157, Edwardsville, 

Appellees
 IL 62025

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 02/17/05.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.