Rule 23 order filed
March 13, 2018;
Motion to publish granted
April 17, 2018.

2018 IL App (5th) 150551

NO. 5-15-0551

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| CONCERNED CITIZENS AND PROPERTY OWNERS; ILLINOIS AGRICULTURAL ASSOCIATION, a/k/a Illinois Farm Bureau; MARY ELLEN ZOTOS; and LANDOWNERS ALLIANCE OF CENTRAL ILLINOIS, NFP, | ) ) ) ) ) ) | Appeal from the Illinois Commerce Commission. |
| Petitioners, | ) ) | |
| v. | ) ) | No. 15-0277 |
| THE ILLINOIS COMMERCE COMMISSION; GRAIN BELT EXPRESS CLEAN LINE LLC; BROWN BRANCH LLC; JAR BRANCH LLC; INFINITY WIND POWER; CITIZENS UTILITY BOARD; ILLINOIS CENTRAL RAILROAD COMPANY; ROCKIES EXPRESS PIPELINE LLC; REX ENCORE FARMS LLC; REX ENCORE PROPERTIES LLC; WIND ON THE WIRES; ENVIRONMENTAL LAW AND POLICY CENTER; BNSF RAILWAY COMPANY; LOCAL UNIONS 51 AND 702 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO; and BUILDING OWNERS AND MANAGERS ASSOCIATION OF CHICAGO, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) | |

_____

PRESIDING JUSTICE BARBERIS delivered the judgment of the court, with opinion.
Justices Goldenhersh and Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1    Concerned citizens, landowners, and intervening parties (appellants) sought judicial

review of a decision by the Illinois Commerce Commission (Commission) granting a certificate

1

of public convenience and necessity to Grain Belt Express Clean Line LLC (GBX), an Indiana company formed to construct and manage a high voltage electric service transmission line to connect wind generation facilities. For reasons that follow, we reverse.

¶ 2                                    BACKGROUND

¶ 3     On April 10, 2015, GBX filed an application with the Commission seeking a certificate of public convenience and necessity for the construction of a new high voltage transmission line under the expedited procedure set forth in section 8-406.1 of the Public Utilities Act (Act) (220 ILCS 5/8-406.1 (West 2012)). GBX sought a certificate of public convenience and necessity to conduct a transmission public utility business to construct, operate, and maintain a 202.7-mile-long electric transmission line to traverse central Illinois from Pike County to a converter station in Clark County.

¶ 4     According to the application filed with the Commission, GBX planned to construct and manage a high voltage direct current (DC) electric transmission line that would run from an alternating current (AC)-to-DC current converter station in Ford County, Kansas, across Kansas and Missouri. The transmission line would then continue as a double AC line for approximately 5.2 miles from the converter station to an interconnection with the PJM Interconnection LLC (PJM) transmission network at the Sullivan/Breed substation of American Electric Power Company in Indiana and a DC-to-AC converter station and delivery point into the Midcontinent Independent Systems Operator (MISO) transmission network in northeast Missouri. From western Kansas and through Missouri, the transmission line would enter Illinois west of New Canton in Pike County, Illinois. The Illinois portion of the transmission line would travel 202.7 miles in a general southeasterly direction through Pike, Scott, Greene, Macoupin, Montgomery,

2

Christian, Shelby, Cumberland, and Clark Counties to a DC-to-AC converter station to be located near West Union, Clark County, Illinois.

¶ 5    GBX included in its April 10, 2015, application that it "will own, control, operate, and manage within the State of Illinois, for public use, facilities for the transmission of electricity and therefore will be a 'public utility,' " but it did not state that it was a public utility. GBX had an option to purchase property that would serve as the site to place equipment for the proposed project. The purpose of the project was to transport clean, low-cost electricity from wind generation plants in western Kansas to electricity markets in Illinois and other PJM and MISO states. The proposed project was to "deliver approximately 2.6 million megawatt-hours ('MWh') of clean energy per year into the MISO market, and up to 18 million MWh of clean energy per year into the PJM market." The project was expected to produce additional wind generation accessible to the Illinois market to meet demands for clean energy and electricity.

¶ 6    On May 18, 2015, the appellants, a group of various landowners and residents owning property in the geographical area subject to this proceeding, filed a motion to dismiss (motion), which questioned the Commission's authority to grant a certificate of public convenience and necessity to a nonpublic utility. The appellant's motion was based on the premise that only a public utility may file an application for a certificate of public convenience and necessity under section 8-406.1 of the Act. Subsequently, several additional motions to dismiss were filed by the following intervening parties: Illinois Agricultural Association, Landowners Alliance of Central Illinois, NFP, Rex Encore, and Rockies Express Pipeline, LLC. Shortly thereafter, the staff of the Commission filed a response to the appellant's motion agreeing that the motion should be granted.

3

¶ 7    On June 12, 2015, the assigned administrative law judge submitted a memorandum to the Commission recommending that the motions be granted in favor of the appellants. On June 16, 2015, however, the Commission voted 3-2 to deny the motions. The Commission entered its final order in favor of GBX on November 12, 2015. The majority opinion stated:

> "The question of whether an entity which is not yet a public utility may file for a CPCN for a new high voltage electric transmission line under Section 8-406.1 has been extensively addressed, in the motions to dismiss and in this Order. The Commission notes that the process is available only for CPCNs for the purpose of constructing a new high voltage electric service line and related facilities. It notes the numerous additional requirements for applicants under Section 8-406.1. These requirements include significant pre-filing activities, public notice provisions, substantial, specifically identified engineering data, and fees, which are not required under Section 8-406. The Commission finds that these considerable prerequisites are consistent with the expedited schedule under Section 8-406.1." *Grain Belt Express Clean Line LLC*, Ill. Comm. Comm'n No. 15-0277, at 39 (Order-Final Nov. 12, 2015).

As such, the Commission determined that the legislature did not intend to preclude nonpublic utility applicants from utilizing section 8-406.1 of the Act to request a certificate of public convenience and necessity to construct and operate a new high voltage transmission line in Illinois. GBX was granted a certificate of public convenience and necessity for the construction of two transmission lines pursuant to sections 8-503 and 8-406.1 of the Act. See 220 ILCS 5/8-503, 8-406.1 (West 2012).

¶ 8    In response, the two Commission members who voted to grant the appellant's motion filed a dissent in opposition to the majority opinion, stating the following:

> "Alternative paths exist for the development of transmission lines, including high voltage lines transporting electricity produced by renewable sources, through Section 8-406 or through a properly filed application under Section 8-406.1. Section 8-406.1 requires applicants to be public utilities. The Commission must enforce the rules set by the General Assembly and cannot change those rules where it possesses no authority to do so.
>
> The majority opinion erroneously concludes that Section 8-406.1 does not require an applicant to be a public utility. The majority opinion arrives at this conclusion without the required analysis to support it. This conclusion leads the majority opinion to then

4

omit a required finding. The majority opinion fails to appropriately apply Illinois statute, ignores Supreme Court and other precedent, and is inconsistent with Commission practice without explanation. GBX's Application should have been dismissed without prejudice. We respectfully dissent." *Grain Belt Express Clean Line LLC*, Ill. Comm. Comm'n No. 15-0277, at 8 (Dissenting Opinion Nov. 13, 2015) (Comm'r McCabe, joined by Comm'r Del Valle).

Shortly thereafter, the appellants filed multiple applications for rehearing. Following the Commission's denial of all applications, the appellants filed a timely petition for review.

¶ 9                                          ANALYSIS

¶ 10   On appeal, the appellants argue that the Commission's decision to grant GBX's application for a certificate of public convenience and necessity was erroneous and should be set aside because GBX was not a public utility at the time of the application, a necessary prerequisite under the Act. Without status as a public utility, the appellants assert that GBX was ineligible to receive, and the Commission had no authority to grant, a certificate of public convenience and necessity under the expedited process set forth in section 8-406.1 of the Act.

¶ 11   In response, GBX and the Commission argue that "the definition of 'public utility' clearly applies to new entrants." To read otherwise, the Commission argues, would have the effect that "no new entity c[ould] ever become a public utility of any type" where no such entity would be able to satisfy the statutory definition under section 3-105 of the Act (220 ILCS 5/3-105 (West 2012)). In particular, GBX also asserts that no basis exists to conclude that the legislature intended to preclude new entrants from requesting and obtaining a certificate under section 8-406.1, given that new entrants can obtain status as a public utility during the application process under section 8-406 of the Act (*id.* § 8-406). Moreover, GBX asserts that the determinative question for the Commission, and now this court, is not whether GBX was a public utility at the time of the application but whether the applicant is able to demonstrate that

5

its proposed electric transmission line satisfies the substantive criteria for issuance of a certificate. We disagree.

¶ 12    Appellate review of final decisions of the Commission, an administrative agency, involves the exercise of special statutory jurisdiction and is constrained by the provisions of the Act. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 387 (2008). The Act provides that a "court shall reverse a Commission *** order or decision, in whole or in part, if it finds," *inter alia*, that the "findings of the Commission are not supported by substantial evidence based on the entire record of evidence," the "order or decision is without the jurisdiction of the Commission," or the "order or decision is in violation of the State or federal constitution or laws." 220 ILCS 5/10-201(e)(iv) (West 2012). We review such questions *de novo*. See *Illinois Landowners Alliance, NFP v. Illinois Commerce Comm'n*, 2017 IL 121302, ¶ 29.

¶ 13    Pursuant to section 8-406.1, the section utilized by GBX in the instant case, "[a] public utility may apply for a certificate of public convenience and necessity pursuant to this Section for the construction of any new high voltage electric service line and related facilities (Project)." 220 ILCS 5/8-406.1(a) (West 2012). Section 8-406.1 sets forth an "expedited review process of an application," which requires that the application include additional information and the public utility meet additional requirements. *Id.* After a notice and hearing, the Commission shall "grant a certificate of public convenience and necessity filed in accordance with the requirements of this Section if, based upon the application filed with the Commission and the evidentiary record," the Commission "finds the Project will promote the public convenience and necessity and that all of the following criteria are satisfied:

> (1) That the Project is necessary to provide adequate, reliable, and efficient service to the public utility's customers and is the least-cost means of satisfying the service needs of the public utility's customers or that the Project will promote the

6

development of an effectively competitive electricity market that operates efficiently, is equitable to all customers, and is the least cost means of satisfying those objectives.

(2) That the public utility is capable of efficiently managing and supervising the construction process and has taken sufficient action to ensure adequate and efficient construction and supervision of the construction.

(3) That the public utility is capable of financing the proposed construction without significant adverse financial consequences for the utility or its customers." *Id.* § 8-406.1(f)(1)-(3).

¶ 14  We first address the parties' arguments regarding the definition of "public utility" as set forth in the Act. Section 3-105 of the Act defines a "public utility" as follows:

"[E]very corporation, company, limited liability company, association, joint stock company or association, firm, partnership or individual, their lessees, trustees, or receivers appointed by any court whatsoever that owns, controls, operates or manages, within this State, directly or indirectly, for public use, any plant, equipment or property used or to be used for or in connection with, or owns or controls any franchise, license, permit or right to engage in ***." *Id.* § 3-105(a).

The Commission argues that "the definition of a public utility clearly includes the owner of plant, equipment and property which is intended for future public use but has not yet been built ('to be used'). There is no restriction in either statutory provision to preexisting public utilities, *i.e.*, utilities that already own other utility assets." Thus, the Commission argues that "to be used," as written by the legislature, is a term that looks to future usage.

¶ 15  We note, however, that the definition of "public utility" was recently clarified by the Illinois Supreme Court in *Illinois Landowners Alliance, NFP v. Illinois Commerce Comm'n*, 2017 IL 121302. In *Illinois Landowners Alliance, NFP*, our supreme court determined that when the Commission grants a company a certificate of public convenience and necessity under section 8-406 of the Act, the "central question remains: Does it even qualify as a public utility under Illinois law so as to be eligible for such a certificate under section 8-406 of the Public Utilities Act (220 ILCS 5/8-406 (West 2012))?" 2017 IL 121302, ¶ 36. In particular, Rock Island

7

submitted an application to the Commission for the issuance of a certificate of public convenience and necessity under sections 8-406(a) and (b) of the Act (220 ILCS 5/8-406(a), (b) (West 2012)) to permit it to operate as a transmission public utility in Illinois to construct, operate, and maintain an electric transmission line. *Illinois Landowners Alliance, NFP*, 2017 IL 121302, ¶ 18. Rock Island also requested that the Commission enter an order authorizing and directing construction of the proposed transmission line under section 8-503 of the Act (220 ILCS 5/8-503 (West 2012)). *Illinois Landowners Alliance, NFP*, 2017 IL 121302, ¶ 18. Similar to the case at issue, the parties in opposition to Rock Island's application filed motions to dismiss asserting that Rock Island "did not meet the threshold criteria necessary to qualify as a public utility within the meaning of section 3-105 of the Act," and, as a result, Rock Island was ineligible for relief by the Commission. *Id.* ¶ 20.

¶ 16    Our supreme court determined that Rock Island, a new entrant, was required to present ownership of utility infrastructure assets to qualify as a public utility, as defined in section 3-105, in order to obtain a certificate of public convenience and necessity under section 8-406 of the Act. *Id.* ¶ 48. In order to qualify as a public utility, our supreme court concluded that "the company must also *own*, *control*, *operate*, *or manage*, within this State, directly or indirectly, a plant, equipment, or property used or to be used for or in connection with (or must own or control any franchise, license, permit, or right to engage in) the production, transmission, sale, etc. of one of the specified commodities or services." (Emphasis in original.) *Id.* ¶ 39. The supreme court noted that the statute is phrased in the present tense because it requires that a company must own, control, operate, or manage, within the state, a plant, equipment, property, franchise, etc. at the time it seeks certification by the Commission. *Id.* ¶¶ 40, 45.

¶ 17    The supreme court reasoned that when the General Assembly repealed the prior language in section 3-105 of the Act, which defined a public utility as "every corporation *** that now or hereafter *** may own, control, operate or manage" specific plants, equipment, or property (Ill. Rev. Stat. 1965, ch. 111$^2$/$_3$, ¶ 10.3), it intended, as the court must presume, to speak only to ownership in the present tense when it eliminated the words "that now or hereafter *** may." *Illinois Landowners Alliance, NFP*, 2017 IL 121302, ¶ 42. As a result, the court determined that courts must read the statute as "evincing an intention by the legislature to limit the definition of 'public utility' to situations where the subject entity meets the ownership test at the present time." *Id.*

¶ 18    The supreme court noted, however, that the Act does not prohibit new entrants from commencing development as a purely private project before applying to become a public utility in Illinois:

> "Once their projects are further underway and they have obtained the ownership, management, or control of utility-related property or equipment required to qualify as public utilities, they may then seek certification to operate as public utilities if they wish to conduct their business in a way that would make them subject to the Public Utilities Act's regulatory framework." *Id.* ¶ 48.

As a result, applicants may seek recognition as a public utility while, at the same time, applying for a certificate of public convenience and necessity under section 8-406(a) as long as they have obtained the ownership, management, or control of utility-related property or equipment at the time of the application. *Id.* ¶¶ 48, 51.

¶ 19    Here, GBX similarly fails to establish that it was a public utility at the time it filed its application with the Commission. It is undisputed that GBX does not presently, or at the time it filed its disputed application with the Commission, own, control, manage, or operate any plant, equipment, or property in Illinois used or to be used for or in connection with the production,

9

transmission, sale, etc. of one of the specified commodities or services. Accordingly, GBX did not meet the definition of a "public utility" under section 3-105 of the Act at the time it filed its application with the Commission.

¶ 20   Nevertheless, GBX argues that when a company applies for a certificate of public convenience and necessity under section 8-406.1 of the Act (220 ILCS 5/8-406.1 (West 2012)), as opposed to section 8-406 of the Act (*id.* § 8-406), the determinative question is, instead, whether the applicant is able to demonstrate that its proposed electric transmission line satisfies the substantive criteria for issuance of a certificate under the expedited process. This substantive criterion includes "the applicant's capability to manage and supervise construction and to finance the construction without significant adverse financial consequences." See *id.* § 8-406.1(f)(2), (3). For further support, GBX argues that the legislature's only intent underlying section 8-406.1 was to provide an "alternative, more expeditious process for obtaining a Certificate," as compared to the no-deadline process under section 8-406. As such, GBX contends that there is no preexisting need to own other utility assets to be approved for a certificate under section 8-406.1 of the Act. We disagree.

¶ 21   In 2010 the legislature enacted the expedited procedure set forth in section 8-406.1 to provide a process by which "[a] *public utility* may apply for a certificate of public convenience and necessity pursuant to this Section for the construction of any new high voltage electric service line and related facilities (Project)." (Emphasis added.) *Id.* § 8-406.1(a). The Act aims to "ensure efficient public utility service at reasonable rates by compelling established public utilities occupying a given field to provide adequate service while at the same time protecting them from ruinous competition." *Illinois Landowners Alliance, NFP*, 2017 IL 121302, ¶ 31 (citing *Gulf Transport Co. v. Illinois Commerce Comm'n*, 402 Ill. 11, 19 (1948); *Bartonville Bus*

10

*Line v. Eagle Motor Coach Line*, 326 Ill. 200, 202 (1927); see also *Fountain Water District v. Illinois Commerce Comm'n*, 291 Ill. App. 3d 696, 701 (1997)).

¶ 22 Our primary goal in statutory construction is to ascertain and effectuate the intent of the legislature. *Midkiff v. Gingrich*, 355 Ill. App. 3d 857, 861 (2005). The best evidence of legislative intent is the words and statute itself, which should be given their plain and ordinary meaning. *Id.* We need only go beyond the words of the statute itself if we cannot discern the intent of the legislature from the statutory language. *Id.* at 862. In construing a statute, we must consider the problem it was enacted to remedy. See *Hyatt Corp. v. Sweet*, 230 Ill. App. 3d 423, 430 (1992). We must evaluate the statute as a whole, interpreting each provision in connection with every other provision. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). "Of all the principles of statutory construction, few are more basic than that a court may not rewrite a statute to make it consistent with the court's own idea of orderliness and public policy." *Illinois Landowners Alliance, NFP*, 2017 IL 121302, ¶ 50.

¶ 23 In applying these principles to section 8-406.1, we are not persuaded that the legislature intended for the expedited review process to be an available avenue for nonpublic utility entities. The Commission's conclusion that any nonpublic utility may apply to be a public utility under section 8-406.1 ignores the express language set out in section 8-406.1(a). Significantly, section 8-406.1 of the Act clearly and unambiguously reads that "[a] *public utility* may apply for a certificate of public convenience and necessity pursuant to this Section." (Emphasis added.) 220 ILCS 5/8-406.1(a) (West 2012). As such, our interpretation of section 8-406.1 requires that the applicant must meet the definition of a public utility. In order to obtain status as a public utility, the applicant must meet the ownership test at the time of application, the same prerequisite in section 8-406, and the Commission must make this finding before issuance of a certificate. Here,

11

GBX holds an option to purchase property that would serve as the site to place equipment for the proposed project. "[H]aving an option to buy something is not the same as owning or even controlling it," and an option agreement "does not involve the transfer or [*sic*] property or an interest therein." *Illinois Landowners Alliance, NFP*, 2017 IL 121302, ¶ 40.

¶ 24    Moreover, we cannot reason that the legislature intended to give unlimited discretion through an expedited review process to nonpublic entities, which would ultimately provide the Commission with no jurisdiction to enforce their projects. As a result, the Commission must find that an entity is a public utility at the time of application in order to utilize the expedited review process in section 8-406.1 of the Act. Unable to meet the requisite ownership test, GBX is not a public utility under section 3-105 of the Act, but rather an entity with a purely private project that does not require the Commission's authority to proceed. Without finding that GBX was a public utility, we hold that the Commission was without authority to grant GBX a certificate of public convenience and necessity under section 8-406.1 of the Act.

¶ 25                                      CONCLUSION

¶ 26    The order of the Commission is hereby reversed and remanded where it granted a nonpublic utility company the authority to construct and manage an electrical transmission line project under the Act's expedited review process without the requisite finding that the applicant was a public utility.


¶ 27    Reversed and remanded.

12

2018 IL App (5th) 150551

NO. 5-15-0551

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| CONCERNED CITIZENS AND PROPERTY OWNERS; ILLINOIS AGRICULTURAL ASSOCIATION, a/k/a Illinois Farm Bureau; MARY ELLEN ZOTOS; and LANDOWNERS ALLIANCE OF CENTRAL ILLINOIS, NFP, | ) ) ) ) ) | Appeal from the Illinois Commerce Commission. |
| Petitioners, | ) ) ) | |
| v. | ) ) | No. 15-0277 |
| THE ILLINOIS COMMERCE COMMISSION; GRAIN BELT EXPRESS CLEAN LINE LLC; BROWN BRANCH LLC; JAR BRANCH LLC; INFINITY WIND POWER; CITIZENS UTILITY BOARD; ILLINOIS CENTRAL RAILROAD COMPANY; ROCKIES EXPRESS PIPELINE LLC; REX ENCORE FARMS LLC; REX ENCORE PROPERTIES LLC; WIND ON THE WIRES; ENVIRONMENTAL LAW AND POLICY CENTER; BNSF RAILWAY COMPANY; LOCAL UNIONS 51 AND 702 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO; and BUILDING OWNERS AND MANAGERS ASSOCIATION OF CHICAGO, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) | |

_____

| | |
|---|---|
| **Rule 23 Order Filed:** | March 13, 2018 |
| **Motion to Publish Granted:** | April 17, 2018 |
| **Opinion Filed:** | April 17, 2018 |

_____

| | |
|---|---|
| Justices: | Honorable John B. Barberis, P.J. |
| | Honorable Richard P. Goldenhersh, J., and Honorable Melissa A. Chapman, J., Concur |

_____

| | |
|---|---|
| **Attorneys for Appellants** | Edward D. McNamara, Jr., Joseph H. O'Brien, McNamara & Evans, 931 South 4th St., Springfield, IL 62705-5039 (attorneys for Concerned Citizens and Property Owners); Charles Y. Davis, Claire A. Manning, Brown, Hay & Stephens LLP, 205 S. 5th St., Suite 700, Springfield, IL 62705 (attorneys for Illinois Agricultural Ass'n); Elizabeth E. Nohren, Dustin L. Probst, Dove & Dove, 151 South Morgan St., Shelbyville, IL 62565-0647; Jonathan L. Phillips, William M. Shay, Shay Phillips, Ltd., 230 SW Adams St., Suite 310, Peoria, IL 61602 (attorneys for Landowners Alliance of Central Illinois, NFP); Paul G. Neilan, Law Offices of Paul G. Neilan, P.C., 1954 1st St., #390 Highland Park, IL 60035 (attorney for Mary Ellen Zotos, by Nafsica Zotos) |

_____

| | |
|---|---|
| **Attorneys for Appellees** | James A. Hansen, Schmiedeskamp, Robertson, Neu & Mitchell LLP, 525 Jersey St., Quincy, IL 62301 (attorney for Brown Branch, LLC, and JAR Branch LLC); Michael A. Munson, Building Owners and Managers Ass'n of Chicago, 115 S. LaSalle, Suite 2300, Chicago, IL 60603 (attorney for Building Owners and Managers Ass'n of Chicago); Justin M. Vickers, Environmental Law and Policy Center, 35 East Wacker Drive, Suite 1600, Chicago, IL 60601 (attorney for Environmental Law and Policy Center); Diana Z. Bowman, Owen E. MacBride, Schiff Hardin |

LLP, 233 South Wacker Dr., Suite 6600, Chicago, IL 60606 (attorneys for Grain Belt Express Clean Line LLC); Thomas R. Stanton, James E. Weging, Douglas P. Harvath, Office of General Counsel, Illinois Commerce Comm'n, 160 N. LaSalle St., Suite C-800, Chicago, IL 60601 (attorneys for Illinois Commerce Comm'n); David D. Streicker, Paula S. Kim, Polsinelli PC, 161 N. Clark St., Suite 4200, Chicago, IL 60601 (attorneys for Infinity Wind Power); Patrick K. Shinners, Rochelle G. Skolnick, Schuchat, Cook & Werner, 1221 Locust St., 2nd Floor, St. Louis, MO 63103-2364 (attorneys for International Brotherhood of Electrical Workers); E. Glenn Rippie, Rooney, Rippie & Ratnaswamy LLP, 350 West Hubbard St., Suite 600, Chicago, IL 60654 (attorney for Rex Encore Farms LLC, Rex Encore Properties LLC, and Rockies Express Pipeline LLC); Sean R. Brady, Wind on the Wires, 204 Secretariat Court, Wheaton, IL 60189-2026 (attorney for Wind on the Wires)

_____