People of the State of Illinois ex rel. Chicago Title & Trust Company, an Illinois Corporation, Trustee Under Trust Agreement, Dated May 11, 1945, and Known as Trust No. 32,744; Ralph Markus and Limar Belwood Incorporated, an Illinois Corporation, Plaintiffs-Appellees, v. Mission Brook Sanitary District, a Municipal Corporation; Joseph Heber, President of the Mission Brook Sanitary District; George W. Grove and Wilbert Struck, Trustees of the Mission Brook Sanitary District, Defendants-Appellants, and Village of Northbrook, a Municipal Corporation; B. L. Pollak, President of the Board of Trustees of the Village of Northbrook; and Edgar J. Wessling, Village Clerk of the Village of Northbrook, Defendants-Appellees.

Gen. No. 50,860.

First District, Third Division.

November 3, 1966.

Rehearing denied December 1, 1966.

Robert J. Downing, of Chicago (Robert G. Lussier and Raskin and Downing, of counsel), for defendants-appellants.

Herrick, Vette, McNeill & McElroy, of Chicago (William T. McNeill, Ray W. Fick, Jr., and Robert W. Singer, of counsel), for plaintiffs-appellees.

Frederic O. Floberg and Richard V. Houpt, of Chicago, for defendants-appellees.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Plaintiffs instituted a mandamus proceeding in the Circuit Court of Cook County against the defendant Mission Brook Sanitary District and the President and members of the Board of Trustees thereof, seeking a writ to direct said President to approve plaintiffs' plans for connection of proposed sanitary sewers to the existing facilities of the Sanitary District. The plaintiffs joined as defendants therein the Village of Northbrook and its President and Village Clerk seeking a writ to direct said President and Village Clerk to approve plaintiffs' proposed plat of subdivision.

The Sanitary District refused to permit connection to its sewer system unless plaintiffs also connected to its water distribution system in compliance with its ordinances. The Village refused to approve the plat of subdivision because the Sanitary District approval for sewer facilities had not been given, and maintained that

water connection must be to the Village in compliance with Village ordinances.

A judgment was entered finding that the Village of Northbrook and the Mission Brook Sanitary District have coequal jurisdiction to supply water to the plaintiffs' real estate and that plaintiffs have the right to select which water distribution system will service such real estate and to connect said water supply system with the water distribution system of the Village of Northbrook. It is from this judgment that an appeal was prosecuted by the Mission Brook Sanitary District.

The contentions of the defendant appellant, Sanitary District, are: (1) The property in question has been within the territorial boundaries of the Sanitary District since its inception and is subject to its jurisdiction on both sewer and water matters; (2) the Sanitary District cannot be ousted of its jurisdiction by a village imposing conditions under its purported plat approval authority which impede the application of such jurisdiction; (3) it is patently erroneous to declare as a rule of law the proposition that the individual property owner is vested with the power to decree which of two municipalities has the authority and responsibility over water in a given area.

The Mission Brook Sanitary District was established on August 11, 1959, by order of the then County Court of Cook County, Illinois. Included within its boundaries was the property involved in this case. The plaintiff, Ralph Markus, had contracted to purchase the property in April, 1963, for the purpose of subdividing the same and building single family dwellings thereon. Prior to that time the Sanitary District had held a referendum election to authorize the acquisition of a water distribution system then serving Northbrook West, and an area contiguous to the subject property. After a successful election the Sanitary District passed an authorizing ordi-

nance, agreed to purchase the system for $59,000, and issued water revenue bonds in the amount of $65,000 to finance this acquisition. In the latter part of 1963 the plaintiff submitted a tentative plat of subdivision of the subject property to the Village of Northbrook. Plaintiff was advised by the Village that such approval would be given only if the land were first annexed to the Village, if the plaintiff agreed to pay to another real-estate developer a share of the cost of such developer in extending oversize water mains into the area east of the subject property, and if he agreed to obtain water service from the Village. The annexation was completed and payment was made to the other developer. It was further provided that to obtain Village approval of the plat the engineering plans had to first be approved by the Sanitary District. This latter approval was denied because plaintiff failed to agree to obtain water service from the Sanitary District. At the time approval was sought neither municipality was operating a water distribution system within the subject property.

Defendant Sanitary District first contends that it has exclusive jurisdiction of the property within its boundaries on both sewer and water matters by legislative grant as found in:

> "An Act to create sanitary districts and to provide for the annexation of additional territory to any such district and to authorize sanitary districts to acquire by purchase or construction and upon acquisition to maintain and operate a waterworks or drainage system and to improve and extend the same and issue general obligation bonds, revenue bonds, or special assessment bonds to pay the cost thereof which revenue bonds shall be payable solely from the revenues of such waterworks or drainage system and to provide for a method of dissolution of such sanitary districts." (Ill Rev Stats 1963, c 42, par 412, et seq.)

426

Section 32b of that Act (Ill Rev Stats 1963, c 42, par 443b) provides:

"Any sanitary district created hereunder, after being authorized by an affirmative vote of the legal voters of the district at an election to be held as is hereinafter provided, may acquire, purchase, or construct waterworks, and thereafter operate, improve and extend such waterworks as defined herein, and pay the cost of such purchase, construction, improvement or extension by the issuance and sale of general obligation bonds, revenue bonds, or special assessment bonds of the district, which revenue bonds shall be payable solely from the revenue to be derived from the operation of the waterworks."

Nowhere does the above provision grant exclusive jurisdiction to the district involved. Neither does it provide that no other system of waterworks may be established within the territorial limits of the district. This section is further clarified by section 37 of the same Act.

"Whenever any territory contained within a sanitary district created under this Act is annexed to any municipality, the sanitary district *shall remain responsible* for providing sewers and collecting and disposing of sewage in such territory annexed to the municipality and, *if the sanitary district is operating a water supply system in such territory at the time of such annexation,* the sanitary district *shall remain responsible for supplying water in such territory.* The municipality to which any territory contained within a sanitary district is annexed shall not, because of such annexation, become responsible for any obligations, or part thereof, of any sanitary district in which such territory is also contained. The fact that territory in a sanitary district is annexed to a municipality shall not affect any obligations,

contracts or duties existing between the sanitary district and the municipality at the time of such annexation." (Ill Rev Stats 1963, c 42, par 447.1.) (Emphasis supplied.)

This section imposes a clear duty on the trustees to continue operation of a sewage system within the whole territory, but imposes this same duty with regard to water service only within areas then being served. If jurisdiction or right to provide water service were nonetheless exclusive in the sanitary district, any area not then being served could be deprived of any waterworks system by failure of the district trustees to undertake the operation of a system therein. If, in fact, a rule of exclusive jurisdiction over the territory is more desirable, it is for the legislature to so provide. The courts can only interpret the provisions as enacted.

Furthermore, the operation of a sewage system differs from that of a waterworks system in its relationship to a municipality. The court in Ruth v. Aurora Sanitary Dist., 17 Ill2d 11, 158 NE2d 601, said at page 20:

"The governmental function granted to sanitary districts is the treatment and purification of sewage for the preservation of public health, People ex rel. Village of South Chicago Heights v. Bergin, 340 Ill 20, 172 NE 60. The abatement of the discharge of raw sewage or inadequately treated sewage is a direct and proximate obligation of that governmental function. (Citing cases.)"

██ On the other hand, the operation of a waterworks system is a proprietary function of any municipality. In City of West Frankfort v. United Ass'n of Journeymen, 53 Ill App2d 207, 202 NE2d 649, the court said on page 212:

"A municipal corporation selling water for private consumption does so in its proprietary rather than

governmental capacity. No distinction is to be drawn between such business when indulged in by a municipality and when engaged in by a private corporation. City of Chicago v. Ames, 365 Ill 529, 7 NE2d 294. In Baltis v. Village of Westchester, 3 Ill2d 388, 121 NE2d 495, the rule is well stated as follows: 'a municipal corporation owning and operating a water system and selling water to individuals, although engaged in a public service, does so in its proprietary capacity, not in any governmental capacity, and no distinction is to be drawn between such business whether engaged in by a municipality or by a private corporation.' "

 Since the supplying of water is a proprietary function, the Sanitary District and the Village can operate water distribution systems with coequal jurisdiction.

Finally, the rule against two municipalities having concurrent jurisdiction of the same territory has arisen primarily from cases involving double assessments of the properties which assessments duplicate the costs without increasing the benefits received. In this case both water supply systems (of the Sanitary District and of the Village) are now financed through revenue bonds, which are to be paid off solely with operating revenue. Furthermore, plaintiff is choosing to connect up to the Village system with full knowledge of the financing of both systems.

 Because of a lack of exclusivity of right to supply water to the property involved in this case, and a positive duty to supply sewage service to that same property, the Sanitary District was without right to deny its approval of plaintiffs' engineering plans unless plaintiffs also agreed to purchase water service from the Sanitary District.

The Sanitary District next contends that the Village is seeking to oust the Sanitary District of its rightful

429

jurisdiction. As pointed out above, the jurisdiction of the Sanitary District is not exclusive. In addition, this Village has the right to establish and operate a waterworks system or water supply system within or without of its corporate limits. (Ill Rev Stats 1963, c 24, par 11–129–1.) It is plain, therefore, that both the Village and the Sanitary District have the power to operate water systems.

The Sanitary District finally contends that it is unreasonable to give to the individual property owner the right to decree which of the two municipalities has the authority and responsibility over water in a given area. We have already determined that both municipalities have the power to supply the area in question with water. Either may undertake to do so, but it may be assumed that neither would so operate if none of the residents therein were willing to purchase available water. It follows that the choice must be made by the owner(s) or developer(s) who elect to contract with one or the other municipality for water service. Such choice will rest on benefits offered by the competing concerns. In this case the economic considerations are particularly important in that the Village offers Lake Michigan water for the price of 57½ cents per 1,000 gallons, whereas the Sanitary District offers well water for the price of $1.05 per 1,000 gallons for the first 10,000 gallons. We further find no inherent danger in having the choice of a municipal water supplier in the hands of the ultimate user. This would be the case were the competing suppliers private corporations, and we have determined that in supplying water to residents a municipality is engaging in a proprietary function.

Because the Mission Brook Sanitary District and the Village of Northbrook had coequal jurisdiction and right to supply the subject property with water service, and because the plaintiff had the right to select which water

distribution system will service the property, the judgment of the circuit court is affirmed.

Judgment affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.