FOUNTAIN WATER DISTRICT, Petitioner, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents.

Fifth District   No. 5—96—0531

Opinion filed August 1, 1997.

Arthur W. Morris, of Traughber, Reitz & Morris, Ltd., of Columbia, for petitioner.

Myron A. Hanna and Thompson Coburn, both of Belleville, for respondent Illinois-American Water Company.

John J. Reichart, Special Assistant Attorney General, of Springfield, for respondent Illinois Commerce Commission.

JUSTICE WELCH delivered the opinion of the court:

Fountain Water District, a public water district, appeals from an order of the Illinois Commerce Commission that granted a certificate of public convenience and necessity to Illinois-American Water Company to extend its water distribution system to a subdivision, known as Country Aire Estates, located within the geographical boundaries of, but not serviced by, Fountain Water District. For reasons that follow, we affirm.

Fountain Water District (Fountain) is a public water district, organized and created under the provisions of the Public Water District Act. 70 ILCS 3705/0.01 et seq. (West 1994). That act provides that in this state any contiguous area of not more than 500,000 inhabitants may be created into a public water district by a process of referendum and order of court which fixes and determines the limits and boundaries of the district. 70 ILCS 3705/1, 2 (West 1994). The public water district is a public corporation and a political subdivision of the state. 70 ILCS 3705/2 (West 1994).

The Public Water District Act (Act) prohibits a public water district from operating a water distribution system within any city, town, or village within its geographical limits except by contract therewith, but the Act permits a district to supply water to areas located outside its geographical limits. 70 ILCS 3705/1, 10 (West 1994). The district may levy taxes and issue revenue bonds. 70 ILCS 3705/5a, 17 (West 1994). Finally, the Act provides that it shall be deemed a general law, complete in itself, and that it shall be liberally construed. 70 ILCS 3705/25 (West 1994).

Illinois-American Water Company (Illinois-American) is a public utility within the meaning of the Public Utilities Act (220 ILCS 5/3—

105 (West 1994)). It provides water service to areas in St. Clair County and Monroe County, including the area contiguous to that serviced by Fountain Water District. As a public utility, Illinois-American is regulated and supervised by the Illinois Commerce Commission (Commission) pursuant to the Public Utilities Act. 220 ILCS 5/4—101 (West 1994).

Country Aire Estates, the subdivision in question, is located within the geographical boundaries of Fountain Water District but is not being serviced by that district. A few of the property owners in the subdivision receive their water from Illinois-American pursuant to a certificate of public convenience and necessity issued by the Commission in 1993 with the consent of Fountain. The rest of the landowners in the subdivision obtain their water from individual cisterns or wells.

On April 24, 1995, Illinois-American filed with the Commission an application for a certificate of public convenience and necessity authorizing it to expand its water service to residents of the Country Aire Estates subdivision. Fountain intervened in the proceedings before the Commission and objected to the granting of a certificate of public convenience and necessity to Illinois-American to service the Country Aire Estates subdivision. Fountain argued that: (1) as the public water district within whose boundaries the subdivision was located, it has the exclusive right to provide service to the subdivision; (2) it possesses "first in the field" protection from another water provider usurping the opportunity to provide water to the subdivision; and (3) based on prior acts and representations, Illinois-American is barred by collateral estoppel from obtaining a certificate to service the subdivision.

Following a hearing, the Commission granted Illinois-American a certificate of public convenience and necessity to provide water to the Country Aire Estates subdivision. Fountain appeals.

■ Fountain's first argument on appeal is that the Commission did not have jurisdiction to grant Illinois-American authority to service an area located within the corporate boundaries of a public water district and that Fountain has the exclusive right to service residents located within its corporate boundaries. This argument involves a question of law, which we review *de novo. People ex rel. Hartigan v. Illinois Commerce Comm'n*, 148 Ill. 2d 348, 367 (1992).

There are certain points on which the parties and this court agree: Fountain has the right to service the Country Aire Estates subdivision, as it lies within the geographical boundaries of the district; the Commission does not have jurisdiction over Fountain, which is a public water district rather than a public utility (see 220

ILCS 5/3—105 (West 1994)); and neither the Public Utilities Act nor the Public Water District Act expressly authorizes or prohibits a public utility to service an area located within a public water district, and neither act grants to a public water district the exclusive right to service landowners within its geographical boundaries. Fountain argues, however, that the Public Water District Act does provide a means whereby owners of property located within the district may petition the court to disconnect from the district (70 ILCS 3705/28.1 (West 1994)) and that only then may a public utility seek authorization to service the area. Fountain argues that this more specific provision of the Public Water District Act allowing such disconnection should control over the more general provisions of the Public Utilities Act which do not address the question. See *People v. Villarreal*, 152 Ill. 2d 368 (1992). Fountain concludes that the Commission does not have jurisdiction to grant Illinois-American permission to service an area located within the corporate boundaries of a public water district.

Fountain offers no case law in support of its position. However, this court dealt with a similar issue in *People ex rel. Chicago Title & Trust Co. v. Mission Brook Sanitary District*, 76 Ill. App. 2d 423 (1966), and concluded that two competing suppliers of water, a village and a sanitary district, had coequal jurisdiction to service an overlapping area. The property in question was located within the territorial boundaries of the sanitary district and was subject to its jurisdiction on both water and sewer matters. The landowner sought subdivision plat approval from the Village of Northbrook, which withheld such approval unless the land was annexed to the village and the owner obtained its water from the village rather than the sanitary district. However, the sanitary district refused to allow connection to its sewer system unless the landowner also obtained its water from the district. At the time, neither municipality was operating a water distribution system on the subject property.

The sanitary district argued that it had exclusive jurisdiction of the property located within its boundaries by legislative grant found in the Sanitary District Act of 1936 (now 70 ILCS 2805/0.1 *et seq.* (West 1994)), an act quite similar to the Public Water District Act involved in the case at bar. This court pointed out that the Sanitary District Act of 1936 does not grant exclusive jurisdiction to the sanitary district, nor does it provide that no other system of waterworks may be established within the territorial limits of the district. *Mission Brook Sanitary District*, 76 Ill. App. 2d 423. The court held that if a rule of exclusive jurisdiction over the territory is desirable, it is for the legislature to so provide. *Mission Brook Sanitary District*,

76 Ill. App. 2d 423. The court concluded that the village and the sanitary district could operate water distribution systems with coequal jurisdiction.

Similarly, in *People ex rel. Buffalo Utility Co. v. Village of Buffalo Grove*, 85 Ill. App. 2d 382 (1967), this court held that there is nothing to prevent a municipally owned utility (such as a public water district) from competing directly in the same area of operation with a privately owned utility (such as a public utility).

In the instant case, we find no provision in either the Public Water District Act or the Public Utilities Act that grants to either a public water district or a public utility an exclusive right to service a particular area, or bars one from operating within the geographical boundaries of the other. Because the provision of water service is a proprietary rather than a governmental function (see *O'Fallon Development Co. v. City of O'Fallon*, 43 Ill. App. 3d 348 (1976)), competition with the public water district is not prohibited. See *People ex rel. Chicago Title & Trust Co. v. Mission Brook Sanitary District*, 76 Ill. App. 2d 423 (1966).

That the Public Water District Act allows certain property owners to disconnect from the district in certain specified circumstances does not translate into an exclusive right in the district to provide water service within its boundaries. It simply allows certain owners to remove themselves from the district and its future taxing authority. 70 ILCS 3705/28.1 (West 1994).

Nor do we find any language in either act that limits the jurisdiction of the Commission to matters affecting areas lying outside the geographical boundaries of a public water district. The Commission has jurisdiction over Illinois-American, a public utility. Illinois-American sought approval to operate a water distribution system in an area located within a public water district. There is no jurisdictional bar to the Commission granting such approval in the case at bar. As the court stated in *Mission Brook Sanitary District*, 76 Ill. App. 2d 423, if a rule of exclusive jurisdiction over the territory is desirable, it is for the legislature to so provide. The Commission did not err in finding that it had jurisdiction to grant Illinois-American a certificate of public convenience and necessity.

■ We turn now to the second issue raised by Fountain: that the Illinois Commerce Commission erred when it failed to apply the "first in the field" doctrine to deny Illinois-American a certificate of convenience and necessity. The first-in-the-field doctrine provides that where additional or extended service is required, and a utility already in the field makes known its willingness and ability to furnish the required service, the Commission is not justified in granting a

certificate of convenience and necessity to a competing utility not already in the field, unless the utility in the field has had an opportunity to demonstrate its ability to give the required service. *Bartonville Bus Line v. Eagle Motor Coach Line*, 326 Ill. 200 (1927). This doctrine protecting the pioneer in the field is based on a consideration of the time and money expended by the pioneer in developing its business and rendering adequate service to the public and on the pioneer utility having taken the bitter with the sweet throughout the years of the development of the utility business in the area. *Eagle Bus Lines, Inc. v. Illinois Commerce Comm'n*, 3 Ill. 2d 66 (1954).

Fountain argues that it was, in fact, first in the field, that it demonstrated that it is ready, willing, and able to provide adequate service to the public in the area, and that it is entitled to the protection of the doctrine. The Commission found that the doctrine of first in the field was not applicable in the instant case because Fountain is not a "public utility" within the purview of the Commission and the Public Utilities Act. We agree as a matter of law.

■ There is no question that Fountain is not a public utility within the meaning of the Public Utilities Act. Section 3—105 of that act expressly excludes from the definition of "public utility" any utility owned and operated by any political subdivision such as a public water district. 220 ILCS 5/3—105(c)(1) (West 1994). Both parties agree that Fountain is not a public utility within the purview of the Public Utilities Act and that it is not under the supervision or control of the Commission.

The policy established by the Public Utilities Act is to provide the public with efficient service at a reasonable rate, by compelling an established public utility occupying a given field to provide adequate service and at the same time protecting it from ruinous competition. *Bartonville Bus Line v. Eagle Motor Coach Line*, 326 Ill. 200, 202 (1927). The convenience and need of the public are of primary importance under the Public Utilities Act, and the Act contemplates actual supervision of every public utility, so that continuous, uniform, and satisfactory service shall be rendered to the public at reasonable rates and without discrimination. *Commerce Comm'n v. Chicago Rys. Co.*, 362 Ill. 559, 566-67 (1936). The Public Utilities Act provides the means for compelling a public utility to provide adequate service for the public in the territory that it serves. *Illinois Power & Light Corp. v. Illinois Commerce Comm'n*, 320 Ill. 427 (1926). The first-in-the-field doctrine balances this regulation by protecting the public utility from ruinous competition.

It stands to reason that the first-in-the-field doctrine would not apply to an entity not subject to the regulation of the Public Utilities

Act or the supervision and control of the Commission. Such an entity is not entitled to the protection offered by the first-in-the-field doctrine because the Commission has no assurance that the entity is providing continuous, uniform, and satisfactory service to the public at reasonable rates and without discrimination, and the Commission has no means of compelling such service.

In *People ex rel. Buffalo Utility Co. v. Village of Buffalo Grove*, 85 Ill. App. 2d 382 (1967), we recognized this reasoning by holding that a municipally owned utility system was not entitled to first-in-the-field protection. We pointed out that such a municipally owned utility was specifically excepted from the provisions of the Public Utilities Act.

We conclude as a matter of law that the doctrine of first in the field does not apply to protect a public water district, which is not a public utility within the meaning of the Public Utilities Act. The Commission did not err in so holding.

■ Finally, Fountain argues that the Commission erred in refusing to hold that Illinois-American is barred by the doctrine of equitable estoppel from seeking and obtaining a certificate of public convenience and necessity to service Country Aire Estates subdivision, based on prior representations it made to Fountain and the Commission. The Commission held that it had no authority to consider the issue of equitable estoppel in deciding whether to grant a certificate of public convenience and necessity. As a matter of law, we agree.

The sole power of the Commission comes from the Public Utilities Act, and it has power and jurisdiction only to determine facts and make orders concerning the matters specified in that act. *Lowden v. Illinois Commerce Comm'n*, 376 Ill. 225 (1941). Those matters to be considered in determining whether to grant a certificate of convenience and necessity are set forth in section 8—406 of the Act:

> "(b) *** The Commission shall determine that proposed construction will promote the public convenience and necessity only if the utility demonstrates: (1) that the proposed construction is necessary to provide adequate, reliable and efficient service to its customers and is the least-cost means of satisfying the service needs of its customers; *** (3) that the utility is capable of efficiently managing and supervising the construction process and has taken sufficient action to ensure adequate and efficient construction and supervision thereof; and (4) that the utility is capable of financing the proposed construction without significant adverse financial consequences for the utility or its customers. ***
>
> * * *
>
> (d) In making its determination, the Commission shall attach primary weight to the cost or cost savings to the customers of the

utility. The Commission may consider any or all factors which will or may affect such cost or cost savings." 220 ILCS 5/8—406(b), (d) (West 1994). These elements properly focus on the convenience and necessity of the public and do not authorize the Commission to consider such equitable matters as estoppel or such issues as contractual relations or agreements between competing utilities.

An administrative agency is different from a court because an agency only has the authorization given to it by the legislature through the statutes. *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989). An administrative agency has no inherent judicial powers. *Ford v. Environmental Protection Agency*, 9 Ill. App. 3d 711 (1973). The Commission did not err in holding that it had no authority to consider the issue of equitable estoppel in determining whether to grant Illinois-American a certificate of public convenience and necessity to extend its water service to the Country Aire Estates subdivision.

For the foregoing reasons, the decision of the Illinois Commerce Commission granting a certificate of public convenience and necessity to Illinois-American Water Company to extend its water service to the Country Aire Estates subdivision is hereby affirmed.

Affirmed.

MAAG and CHAPMAN, JJ., concur.