177 P.3d 1224

ARIZONA WATER COMPANY,
an Arizona corporation,
Plaintiff/Appellant,

v.

ARIZONA CORPORATION COMMISSION, an agency of the State of Arizona, Defendant/Appellee,

and

Woodruff Water Company, Inc.,
Intervenor/Appellee.

No. 1 CA–CV 07–0167.

Court of Appeals of Arizona,
Division 1, Department B.

March 13, 2008.

Bryan Cave, LLP By Steven A. Hirsch, Rodney W. Ott, Phoenix, Attorney for Plaintiff/Appellant.

Arizona Corporation Commission By Janet F. Wagner, Charles H. Hains, Phoenix, Attorneys for Defendant/Appellee.

Sacks Tierney PA By Marvin S. Cohen, Co–Counsel, Scottsdale, for Intervenor/Appellee.

Snell & Wilmer By Jeffrey W. Crockett, Marcie Shuman, Co–Counsel, Phoenix, for Intervenor/Appellee.

## OPINION

TIMMER, Judge.

¶ 1 Plaintiff-appellant Arizona Water Company ("Arizona Water") holds a certificate of convenience and necessity ("CC & N") issued by defendant-appellee Arizona Corporation Commission ("Commission") to provide water to specified communities within Pinal County, Arizona. Arizona Water wished to extend its service to Sandia, a new community under development in the county. Rather than award a CC & N to Arizona Water for this purpose, the Commission awarded the CC & N to intervenor-appellee Woodruff Water Company ("Woodruff Water"), a start-up company that had not previously served Pinal County. The superior court affirmed the Commission's decision and Arizona Water appealed.

¶ 2 To resolve this appeal, we must decide whether Arizona recognizes the first-in-the-field doctrine, which entitles a utility able, willing, and holding a CC & N to extend its service to new customers who reside in the field of the utility's existing service area, and, if so, the scope of that doctrine. Assuming the doctrine does not apply, we must decide whether the superior court correctly ruled that the Commission did not otherwise err by awarding the CC & N to Woodruff Water. For the following reasons, we hold that Arizona does not recognize a common law first-in-the-field doctrine and that sufficient evidence supported the Commission's award. Consequently, we affirm.

## BACKGROUND

¶ 3 Pivotal Group ("Pivotal") is a multimillion dollar company that develops both residential and commercial properties and master-planned communities in Arizona, Utah, Texas, and Colorado. Currently, Pivotal is developing "Sandia," a 3,200–acre master-planned community located between the cities of Casa Grande and Coolidge in Pinal County. When completed in about twenty years, Sandia will consist of approximately 9,500 residential units with commercial development, schools, parks, and a golf course, and an estimated future population of 25,000 to 30,000.

¶ 4 Pivotal formed and incorporated Woodruff Water and the Woodruff Utility Company ("Woodruff Utility") to provide public water service and wastewater treatment and sewer services to Sandia. In June 2004, Woodruff Water and Woodruff Utility (collectively, the "Woodruff Companies") applied for CC & Ns to provide water service and wastewater service, respectively, to Sandia.

¶ 5 Arizona Water provides water service to approximately 80,000 customers in Arizona, including customers located in Pinal County. At the time the Woodruff Companies applied for CC & Ns to service Sandia, Arizona Water provided water service from its Casa Grande system to areas approximately one mile south and west of Sandia and provided water service from its Coolidge system to an area approximately one mile east of Sandia. Its service area was not contiguous to Sandia.

¶ 6 In October 2004, Arizona Water filed applications to extend its existing CC & N for water service in Coolidge to include Sandia, extend its CC & N for Casa Grande to

include an area under development known as "Martin Ranch," which was contiguous to Sandia, and intervene in Woodruff Water's pending CC & N application. The Commission permitted the intervention and consolidated Arizona Water's applications to extend its CC & Ns with the proceeding involving Woodruff Water. While the parties' applications were pending before the Commission, the City of Coolidge annexed Sandia in September 2005.

¶ 7 In 2005, an administrative law judge ("ALJ") from the Office of Administrative Hearings conducted a seven-day evidentiary hearing over an eleven-week period concerning the pending CC & N applications. The ALJ found that the competing applications to provide water service to Sandia had "relatively equal merit." While recognizing the Commission staff's view that awarding the CC & N to Woodruff Water would have the advantage of allowing the company to integrate its services with those of Woodruff Utility, the ALJ nevertheless concluded that Arizona Water's Coolidge CC & N should be extended to cover service to Sandia as the extension would best serve the public interest.[1] The ALJ further recommended awarding the wastewater CC & N to Woodruff Utility and extending Arizona Water's Casa Grande CC & N to serve Martin Ranch.

¶ 8 In January 2006, Woodruff Water filed exceptions to the ALJ's proposed order, emphasizing the benefits of integrated utilities. At an open meeting held later that month, the Commission considered the recommendation of the ALJ, heard argument from counsel for Arizona Water and Woodruff Water, and extensively discussed the merits of the competing applications. At the conclusion of the meeting, the Commission awarded the

Sandia CC & N for water services to Woodruff Water by a vote of three to two.

¶ 9 In February, the Commission issued Decision No. 68453, which documented the award of the Sandia CC & N to Woodruff Water and included factual findings substantially identical to those recommended by the ALJ. Arizona Water then filed an application for rehearing, which was deemed denied by operation of law. *See* Ariz.Rev.Stat. ("A.R.S.") § 40–253(A) (2001). Thereafter, Arizona Water filed a complaint in superior court against the Commission to modify or set aside Decision No. 68453 pursuant to A.R.S. § 40–254 (2001) on the grounds that it was arbitrary, unreasonable, and unlawful. Arizona Water alleged that the first-in-the-field doctrine was dispositive and required modification of the Commission's decision and, alternatively, that a balancing test of relevant factors required the modification. Woodruff Water intervened in the case, and the parties briefed the merits of their respective positions, relying on the record created before the Commission, and the court heard oral argument. The court ultimately entered findings of fact and conclusions of law, finding that the first-in-the-field doctrine did not apply and that the Commission's decision to award the CC & N to Woodruff Water was neither unreasonable nor unlawful. After entry of judgment, this timely appeal followed.

**STANDARD OF REVIEW**

¶ 10 In any action to set aside a Commission decision, the party adverse to the Commission bears the burden of proof and must show by "clear and satisfactory evidence" that the Commission's decision was unreasonable or unlawful. A.R.S. § 40–254(E) (2001). On appeal, we review the

---

1.  Specifically, the ALJ found that extending Arizona Water's Coolidge CC & N to cover Sandia was in the public's best interest for the following reasons:

    [Arizona Water] will offer Sandia the opportunity to be part of a regional potable water supply planning operation; [Arizona Water] will provide service under an economy of scale; [Arizona Water] has a proven record of success as a public water utility; [Arizona Water] has existing off-site facilities available for possible interconnection; [Arizona Water] has

the ability to develop additional potable water sources; [Arizona Water] has higher ground water allowances for development; [Arizona Water] is in the process of developing additional water supplies under its allotment from the [Central Arizona Project]; and much lower existing water rates than those proposed by [Woodruff Water]. Further, [Arizona Water] has testified that it will work with [Woodruff Utility] to provide an integrated approach to providing utility service.

decision of the superior court and will uphold its ruling if supported by reasonable evidence. *Marco Crane & Rigging v. Ariz. Corp. Comm'n*, 155 Ariz. 292, 294, 746 P.2d 33, 35 (App.1987) (citing *Tucson Elect. Power Co. v. Ariz. Corp. Comm'n*, 132 Ariz. 240, 244, 645 P.2d 231, 235 (1982)). We review questions of law de novo. *Sw. Transmission Coop., Inc. v. Ariz. Corp. Comm'n*, 213 Ariz. 427, 430, ¶ 13, 142 P.3d 1240, 1243 (App. 2006).

## DISCUSSION

¶ 11 Public service corporations in Arizona provide services under a regulated monopoly system rather than one borne of free-wheeling competition. *James P. Paul Water Co. v. Ariz. Corp. Comm'n*, 137 Ariz. 426, 429, 671 P.2d 404, 407 (1983). Before providing services, a public service corporation must obtain a CC & N from the Commission. A.R.S. § 40–281 (2001). The Commission is authorized to issue a CC & N only on a showing that granting the CC & N to a particular applicant would serve the public interest. *James P. Paul Water Co.*, 137 Ariz. at 429, 671 P.2d at 407. When reviewing applications for an initial CC & N, the Commission compares the qualifications of those utilities competing for the CC & N to determine the public interest. *Id.* at 430, 671 P.2d at 408. With exception, the entity granted the CC & N has the exclusive right to provide service in its certificated area as long as adequate service is provided at a reasonable rate. *Id.* at 429, 671 P.2d at 407; *Phelps Dodge Corp. v. Arizona Elec. Power Co-op., Inc.*, 207 Ariz. 95, 100, ¶ 1, 83 P.3d 573, 578 (App.2004) (recognizing that electric industry has shifted from a system of regulated monopolies to a competitive market for provision of some services).

¶ 12 Arizona Water argues the superior court erred in upholding the Commission's award of the Sandia CC & N to Woodruff Water because (1) the common law first-in-the-field doctrine mandated an extension of

Arizona Water's Coolidge CC & N to include Sandia, and (2) alternatively, a comparison of the applications of Arizona Water and Woodruff Water revealed that the public interest would have been best served by extending Arizona Water's Coolidge CC & N to include Sandia. We address each contention in turn.

### I. First-in-the-field doctrine

¶ 13 Arizona Water argues that under the common law first-in-the-field doctrine, because Arizona Water was already certificated, providing service in the Sandia area, and ready, willing, and able to provide service to Sandia, the Commission was required to extend the Coolidge CC & N to include Sandia. The Commission and Woodruff Water respond that Arizona has not adopted the first-in-the-field doctrine. Alternatively, they contend our courts have not recognized Arizona Water's expansive view of what constitutes the "field" of service under the doctrine

¶ 14 Under the first-in-the-field doctrine, when additional or extended service is required in a field already serviced by an existing utility, that utility must be given the opportunity to demonstrate its willingness and ability to provide the new service. *Fountain Water Dist. v. Ill. Commerce Comm'n*, 291 Ill.App.3d 696, 225 Ill.Dec. 670, 684 N.E.2d 145, 150 (1997); *see also* 73B C.J.S. *Public Utilities* § 191 (2007). If the existing utility makes this demonstration, the CC & N must be issued to it rather than to a competitor. *Chicago & W. Towns Rys, Inc. v. Ill. Commerce Comm'n*, 383 Ill. 20, 48 N.E.2d 320, 324 (1943). The doctrine is "based on a consideration of the time and money expended by the pioneer in developing its business and rendering adequate service to the public and on the pioneer utility having taken the bitter with the sweet throughout the years of the development of the utility business in the area." *Fountain Water Dist.*, 225 Ill.Dec. 670, 684 N.E.2d at 150.[2]

---

2. It appears the first-in-the-field doctrine emanated from the Illinois Supreme Court's decision in *Chicago Motor Bus Co. v. Chicago Stage Co.*, 287 Ill. 320, 122 N.E. 477, 478–79, 481 (1919), which held that justice required granting an existing carrier preference in its application for a new CC & N to replace a CC & N about to expire unless the public interest would be best served by awarding the CC & N to another carrier. Since *Chicago Motor Bus*, Illinois courts have continued to apply the doctrine. *See, e.g., Egyptian Transp. Sys. v. Louisville & N.R. Co.*, 321 Ill. 580,

¶ 15 Arizona Water asserts that our supreme court recognized and applied the first-in-the-field doctrine in *Arizona Corporation Commission v. Fred Harvey Transportation Co.*, 95 Ariz. 185, 388 P.2d 236 (1964), in deciding whether the superior court had correctly ruled that two motor service carriers could operate over the same route. Prior to commencement of the dispute in that case, Nava–Hopi Tours had facilities in Flagstaff and operated daily bus service over a 91–mile route from Flagstaff to the Grand Canyon. *Id.* at 187–88, 388 P.2d at 237–38. In contrast, Fred Harvey did not have any facilities in Flagstaff but operated a tour business that occasionally used a 109–mile route from Flagstaff to the Grand Canyon to accommodate tour group requests. *Id.* When an 80–mile route opened between the locales, both Nava–Hopi Tours and Fred Harvey applied to extend their existing, respective CC & Ns to use the route, and the Commission granted Nava–Hopi's application. *Id.* On appeal, the superior court directed the Commission to amend Fred Harvey's CC & N to permit use of the new route, effectively placing the carriers in competition over the route. *Id.* at 188, 388 P.2d at 237.

¶ 16 The Arizona Supreme Court reversed, first noting that, because Arizona is a regulated monopoly state, the decision authorizing competition between the two carriers was erroneous. *Id.* It then recognized that because of its regular schedule and shorter route, Nava–Hopi effectively monopolized the traffic between Flagstaff and the Grand Canyon. *Id.* at 188, 388 P.2d at 238. The court went on to say:

> We need not, however, turn this decision on the obvious fact that Nava–Hopi is in reality the existing carrier between the two termini, Flagstaff and Grand Canyon, and that therefore it had the right to the first opportunity to pr[o]vide any extended or additional service. *See Chicago and West Towns Rys. v. Illinois Commerce Comm.*, 383 Ill. 20, 48 N.E.2d 320; *Egyptian Transp. System v. Louisville & N.R. Co.*, 321 Ill. 580, 152 N.E. 510. We will treat this case as if both Harvey and Nava–Hopi were existing motor carriers in the field and that neither had an exclusive priority to extend its service as a matter of right.

*Id.* at 188–89, 388 P.2d at 238. The court then examined the evidence before the Commission and held that the superior court had erred by finding that the Commission's choice of Nava–Hopi as the carrier for the new route was unreasonable. *Id.* at 189–90, 388 P.2d at 238–39.

¶ 17 Arizona Water relies on the above-quoted language in *Fred Harvey* as demonstrating adoption and application of the first-in-the-field doctrine. We reject this contention. As the Commission and Woodruff Water point out, because the supreme court explicitly did not rest its decision on Nava–Hopi's status as the existing carrier between Flagstaff and the Grand Canyon, the above-quoted language is dictum, which has no precedential value. *Phelps Dodge Corp. v. Ariz. Dep't of Water Res.*, 211 Ariz. 146, 152 n. 9, ¶ 22, 118 P.3d 1110, 1116 n. 9 (App.2005) (explaining that a comment made in a judicial opinion that is unnecessary to the decision is obiter dictum and therefore not precedential). No other case in Arizona has touched on the first-in-the-field doctrine.[3]

152 N.E. 510, 512 (1926); *Fountain Water Dist.*, 225 Ill.Dec. 670, 684 N.E.2d at 150. Although we are not aware of cases decided in other jurisdictions that have explicitly adopted the first-in-the-field doctrine, other courts have adopted principles underlying the doctrine. *See, e.g., Capital Elec. Power Assoc. v. Miss. Power & Light Co.*, 216 So.2d 428, 430 (Miss.1968) (recognizing "existing facility rule," which provides that "[a]n existing utility within the certificated area has the right and duty to provide the service, and must be given that opportunity"); *Pub. Utils. Comm'n v. Home Light & Power Co.*, 163 Colo. 72, 428 P.2d 928, 933 (1967) ("A utility having a prior certificate covering a neighboring territory has the legal authority to expand into unserved and uncertificated territory.").

3. Arizona Water contends the supreme court's decision ten years later in *Arizona Corp. Commission v. Arizona Water Co.*, 111 Ariz. 74, 523 P.2d 505 (1974), "carried forward" *Fred Harvey's* recognition of the first-in-the-field doctrine. We disagree. The court in that case affirmed the superior court's ruling that had vacated the Commission's decision to rescind an award of a CC & N to a public service corporation, which had provided water service in other certificated areas surrounding the contested area on three sides, in favor of awarding the CC & N to a new provider. *Id.* at 76–77, 523 P.2d at 507–08. The decision

¶ 18 Even assuming the *Fred Harvey* court intended to adopt the first-in-the-field doctrine, we do not discern that it intended to adopt the expansive view of the doctrine advocated by Arizona Water. Specifically, Arizona Water contends the doctrine operates to mandate an award of a CC & N to a willing and able public service corporation that serves an area *near* the one subject to the pending CC & N application proceedings. In *Fred Harvey*, however, the court recognized that Nava–Hopi was the existing carrier between Flagstaff and the Grand Canyon and therefore had the right of first refusal to provide additional or extended service between the same locales. 95 Ariz. at 189, 388 P.2d at 238. An award of the contested CC & N to Fred Harvey would have placed Nava–Hopi and Fred Harvey in direct competition. Similarly, the Illinois cases cited by the court as authority each involved awards of routes between locales already serviced by existing carriers and that would create competition. *Id.* (citing *Chicago & W. Towns Rys.*, 48 N.E.2d at 321, addressing award of CC & N to bus carrier for routes that paralleled existing routes of railway and bus carriers, and *Egyptian Transp. Sys.*, 152 N.E. at 510, dealing with CC & N granted to bus carrier for routes that paralleled railway service routes already provided).[4] Consequently, even if we agreed with Arizona Water that *Fred Harvey* adopted the first-in-the-field doctrine, we would not agree that the doctrine would mandate an award of the Sandia CC & N to Arizona Water merely because it provided water services to areas near Sandia.[5] The award of the Sandia CC & N to Woodruff Water did not place it in

competition with Arizona Water as the latter had no preexisting right to service Sandia.

¶ 19 Finally, we are not persuaded to adopt the first-in-the-field doctrine as advocated by Arizona Water for two reasons. First, mandating award of a CC & N to an existing provider in the area may not serve the public interest, which is "the controlling factor in decisions concerning service of water by water companies." *James P. Paul Water Co.*, 137 Ariz. at 429, 671 P.2d at 407. Specifically, the doctrine as advocated by Arizona Water would prevent the Commission from making an award after considering all factors including, as in this case, whether the public's best interest would be served by an integration of services. Although an award pursuant to the first-in-the-field doctrine may indeed serve the public's best interest, it may not. We see no reason to adopt a doctrine that would so constrain the Commission.

¶ 20 Second, the legislature has enacted a statute that automatically expands a public service corporation's existing CC & N territory, thereby providing much of the reward underlying the first-in-the-field doctrine. *See Fountain Water Dist.*, 225 Ill.Dec. 670, 684 N.E.2d at 150; *see also James P. Paul Water Co.*, 137 Ariz. at 429, 671 P.2d at 407 (holding that deleting territory from existing CC & N absent cause would "fail[ ] to reward a public service corporation for taking on the risks and obligations [concomitant] to certification"). Section 40–281, A.R.S. (2001), which requires a public service corporation to obtain a CC & N before servicing an area, further provides, in relevant part, as follows:

in *Arizona Water Company* was not based on any application of the first-in-the-field doctrine. Rather, the court compared the qualifications of the competing providers and concluded that the evidence showed the public interest would be best served by awarding the CC & N to the existing service provider. *Id.*

4. In other cases, the Illinois Supreme Court has applied the first-in-the-field doctrine to applications by service providers to service areas contiguous to their existing territories. *See, e.g., Citizens Valley View Co. v. Ill. Commerce Comm'n*, 28 Ill.2d 294, 192 N.E.2d 392, 396–97 (1963). As previously mentioned, *see supra* ¶ 5, Arizona Water's service area at the time of its application was not contiguous to Sandia.

5. Indeed, the supreme court in *Arizona Water Co.*, 111 Ariz. at 76–77, 523 P.2d at 507–08, did not hold that the existing provider was entitled to the contested CC & N as of right merely because it serviced areas surrounding the area subject to the contested CC & N. Rather, it concluded that the existing provider was entitled to the CC & N based on evidence of the public's best interest. If the *Fred Harvey* court had adopted the first-in-the-field doctrine together with Arizona Water's expansive view of what constitutes the "field," we would have expected the *Arizona Water* court to have resolved the issue before it on that basis.

B. This section shall not require such corporation to secure a certificate for an extension within a city, county or town within which it has lawfully commenced operations, or for an extension into territory either within or without a city, county or town, contiguous to its street, railroad or line, plant or system, and not served by a public service corporation of like character, or for an extension within or to territory already served by it, necessary in the ordinary course of its business. . . .

Thus, § 40–281(B) effectively grants a service provider the right of first refusal to extend its existing service area in specified situations.[6] *Elec. Dist. No. 2 v. Ariz. Corp. Comm'n*, 155 Ariz. 252, 256, 745 P.2d 1383, 1387 (1987).

¶ 21 In summary, we hold that Arizona courts have not recognized or applied the first-in-the-field doctrine, and we decline to do so here. Consequently, the superior court did not err by refusing to vacate the Commission's decision for its failure to adhere to the doctrine.

## II. Comparison of applications

¶ 22 The ALJ, the Commission, and the superior court each concluded that Arizona Water and Woodruff Water had presented applications of relatively equal merit. Essentially, the ALJ recommended awarding the CC & N to Arizona Water because it was an established provider and initially would charge lower rates. *See supra* ¶ 7, n. 2. The majority of commissioners disagreed, finding that the Woodruff Companies' ability to provide integrated water and wastewater services tipped the scales in favor of Woodruff Water. Arizona Water argues the superior court erred in upholding the Commission's choice as a comparison of multiple factors clearly favored Arizona Water over Woodruff Water.

¶ 23 When the Commission has a choice among CC & N applications, we will

not disturb "the wide discretion vested unless it appears that its decision was clearly arbitrary or capricious or in disregard of legal rights." *Fred Harvey Transp.*, 95 Ariz. at 189, 388 P.2d at 238. This is because the Commission was established to make such decisions and has developed the expertise to do so, which is not shared by the courts. *Id.* (citing *State ex rel. Consol. Freight Lines v. Murray*, 182 Wash. 98, 44 P.2d 1031, 1033 (1935)). " 'That a judge of the superior court, or that this court, might be of the opinion that a different order should have been entered than that which the department did enter, does not, of itself, warrant reversal of the department.' " *Id.* With these principles in mind, we consider the record before us.

¶ 24 Arizona Water argues that because it had years of experience operating a water utility, had experienced managers and employees, and had substantial financial resources available, it was clearly more qualified than Woodruff Water, which had no track record, no employees, and minimal capitalization. Woodruff Water's status as a start-up company, however, did not make the Commission's CC & N award arbitrary or capricious. The seminal inquiry is whether Woodruff Water had sufficient resources and expertise to serve the public interest in Pinal County. *See James P. Paul Water Co.*, 137 Ariz. at 429, 671 P.2d at 407. We therefore turn to the evidence bearing on that issue.

¶ 25 The record demonstrates that Woodruff Water had sufficient financial wherewithal and expertise to provide water to Sandia. Carl Polen, vice president of the Woodruff Companies and in charge of the Sandia project, had extensive experience handling water and sewer matters in Pinal County while employed by a developer. Mr. Polen also had experience as a board member of the Central Arizona Project, overseeing operations and participating in formulating water policy in Arizona. Pivotal had

---

6. As previously noted, *see supra* ¶ 6, the City of Coolidge annexed Sandia during the pendency of the parties' applications. Although Arizona Water holds the Coolidge CC & N, it never asserted any rights under A.R.S. § 40–281(B) before the Commission and, at oral argument before this

court, confirmed that it does not assert such rights in this appeal. Accordingly, we need not and do not consider whether A.R.S. § 40–281(B) would mandate a different result from the one we reach here.

thirty years' experience developing property. In addition, although Woodruff Water had only $25,000 as a start-up infusion of capital, Pivotal had a capital base in excess of $500 million. Francis Najafi, chief executive officer of Pivotal, testified that Pivotal wanted to provide water and sewer service because the Sandia project was a multibillion dollar development, and providing those services would allow Pivotal to be more responsive to its customers. He further explained that Pivotal already had available $300 million in capital allocated for discretionary use and would provide necessary equity capital to Woodruff Water as Pivotal was committed to the project. Mr. Polen similarly testified that the success of the Woodruff Companies was integral to the success of the Sandia project as a whole. From this evidence, the Commission and the superior court could have reasonably concluded that Pivotal stands behind Woodruff Water, and that Woodruff Water had sufficient financial wherewithal and expertise to serve the public interest in Sandia.

¶ 26 Arizona Water also argues that it had a broader water system from which to draw and could supply water of better quality than Woodruff Water. The record contains evidence, however, showing that sufficient well water exists in Sandia to serve the needs of the development. Michael Whitehead, vice president of engineering for Arizona Water, testified that Arizona Water proposed using six wells to produce 750 gallons of water per minute each, or 4,500 gallons per minute, and that this volume of water would be sufficient to serve Sandia. Woodruff Water produced evidence that three of the existing wells in Sandia could produce 5,453 gallons per minute—demonstrating that more than enough water was available in Sandia to serve the development.

¶ 27 Arizona Water asserts that the well water in Sandia has high levels of contaminants, such as arsenic, fluoride, nitrates, and total dissolved solids ("TDS"). But Arizona Water would face the same concerns in drilling its wells at Sandia.[7] Moreover, Woodruff

Water presented testimony from a geologist who analyzed water samples from the existing wells. Based on those samples and the depth of the wells from which those samples were drawn, the geologist testified that wells could be drilled that would yield water with acceptable levels of nitrates and TDS. The geologist identified a specific subsurface zone where he expected to see water that would not require treatment for those contaminants. He explained that the company could design and drill a production well that would reduce the amount of contaminants in the water produced and thereby minimize the treatment needed. Although Woodruff anticipated that water from wells drilled in Sandia would need to be treated for arsenic, Mr. Whitehead testified that treatment for arsenic would not be difficult.

¶ 28 Based on the above-described evidence, the superior court did not err by failing to conclude that Woodruff Water would provide an insufficient amount of water or water of a lower quality than Arizona Water, thereby rendering the Commission's CC & N decision arbitrary or capricious.

¶ 29 Arizona Water next argues that the Commission's decision failed to serve the public interest as Arizona Water's customer rates and costs would be significantly lower than Woodruff Water's proposed rates. Arizona Water proposed to charge Sandia customers the same rates it charged its Coolidge customers, resulting in an average water bill of $29, whereas the average monthly bill for a Woodruff Water customer would be $47. Evidence was presented, however, that Woodruff Water included in its initial rates the cost of arsenic and fluoride treatment, while such costs were not included in the rates for Arizona Water. William Garfield, President of Arizona Water, testified that if arsenic treatment was needed for the Sandia project, rates could increase by forty percent. In addition, Arizona Water intended to file a rate case, which could have altered the existing rates, while the proposed rates for Woodruff were expected to remain stable for five years. Consequently, we cannot say the

---

7. Mr. Whitehead testified that Arizona Water would drill six wells within the boundaries of Sandia to serve that area. If those wells were unsuccessful, Arizona Water would then drill them at another location within its service area.

Commission acted arbitrarily by failing to award the Sandia CC & N to Arizona Water based merely on its currently more-favorable rates as the evidence suggested that its rates may rise significantly if arsenic and fluoride treatment is needed for the Sandia wells. Thus, the superior court did not err by refusing to vacate the Commission's award on this basis.

¶ 30 Arizona Water finally contends that the Commission's sole reason for favoring Woodruff Water—the ability to provide integrated services—is unsupported by the evidence, thereby demonstrating the arbitrariness of the award. We disagree. Evidence presented to the Commission suggested that an integrated approach to providing water and wastewater services was advantageous. Steve Olea, a member of the Commission staff, testified that the staff favored awarding the Sandia CC & N to Woodruff Water because of its close relationship with Woodruff Utility, which was the only available wastewater service provider.[8] Mr. Olea explained that in awarding any CC & N, there is both a concern that the company could fail and a desire to do whatever possible to give it every advantage. The Commission staff believed that the Woodruff Companies would work well together,[9] giving Woodruff Utility a greater chance at remaining viable, to the benefit of the public.[10]

¶ 31 The evidence also demonstrated that the Woodruff Companies would work together to minimize the use of groundwater, which would provide long-term benefits to the public. Mr. Polen, who was in charge of the Woodruff Companies, testified that the management of the water and sewer systems in Sandia would be connected. The companies'

goal was to reuse 100 percent of the effluent generated for lakes, parks, and golf courses, using effluent distribution lines that would be constructed along with the distribution lines for potable water. He further explained that an integrated system would allow for the coordination of these activities. This evidence would allow one to conclude that such a coordinated effort in the use of effluent could result in an overall reduction in the use of groundwater, which would be a benefit to the public. Although unaffiliated companies could coordinate such efforts, we cannot fault the Commission for concluding that affiliated companies would more likely do so. Indeed, evidence before the Commission suggested that such cooperation would not be forthcoming from Arizona Water, which had sued wastewater companies for selling effluent within Arizona Water's service areas. For these reasons, we decide that reasonable evidence supported the Commission's conclusion that Woodruff Water's ability to coordinate efforts with Woodruff Utility would benefit the public. Consequently, the superior court did not err by refusing to vacate the Commission's award for lack of evidence concerning integrated services.

¶ 32 In summary, we decide that the superior court correctly ruled that the Commission's decision to award the Sandia CC & N to Woodruff Water was not arbitrary or capricious based on a comparison to Arizona Water's application. Although we recognize that the Commission would have been justified in awarding the Sandia CC & N to Arizona Water, we nevertheless cannot conclude the Commission erred in choosing Woodruff Water. Rather, as did the superior court, we decide that because reasonable evidence supports the Commission's choice,

---

8. Although Arizona Water suggests that the City of Coolidge could have provided wastewater services, the record shows that Coolidge declined to do so.

9. Although Arizona Water correctly points out that no evidence directly demonstrates that the Woodruff Companies would share resources to minimize costs of its service, the Commission could have reasonably made that inference. The companies had the same parent company interested in the success of the project, were overseen by the same individual, and would serve the same community.

10. Woodruff Water contends that the award of the Sandia CC & N would permit it to discontinue water service if a customer was delinquent in paying for wastewater services provided by Woodruff Utility, thereby contributing to that company's viability. We are not persuaded by this contention. Commission rules prevent a water company from terminating service for "nonpayment of a bill related to another class of service." A.A.C. R14–2–410(A). We are not aware of any exception to this rule based on the relationship between the companies providing different classes of services.

we must defer to the Commission's decision. *Fred Harvey*, 95 Ariz. at 189, 388 P.2d at 238.

## CONCLUSION

¶ 33 For the foregoing reasons, we hold that Arizona does not follow the common law first-in-the-field doctrine. The superior court therefore did not err by refusing to vacate the Commission's award for failing to follow this doctrine. Additionally, because reasonable evidence supported the Commission's decision to award the Sandia CC & N to Woodruff Water, the superior court did not err by refusing to vacate the Commission's award as arbitrary or capricious. We affirm.

CONCURRING: DANIEL A. BARKER, Presiding Judge, and PATRICIA A. OROZCO, Judge.